**Henry HUFFSTUTLER, Respondent,**

v.

**Gordon R. COATES, Appellant.**

No. 47689.

Supreme Court of Missouri,

Division No. 1.

April 11, 1960.

Motion for Rehearing or to Transfer to Court en Banc Denied May 9, 1960.

72.

Robert V. Niedner, Rollin J. Moerschel, Niedner & Niedner, St. Charles, James V. Billings, Kennett, for plaintiff.

Sherman Landau, St. Louis, Wentker & McCulloch, St. Charles, for appellant.

COIL, Commissioner.

Henry Huffstutler recovered $7,000 actual and $3,000 punitive damages in his malicious prosecution against Gordon R. Coates. Coates appealed and claims that the trial court erred in refusing to direct a defendant's verdict, in giving and refusing instructions, in permitting improper examination of witnesses by plaintiff's counsel, and that the judgment is excessive. The criminal charge which plaintiff claimed defendant maliciously prosecuted against him was attempted arson. It was and is undisputed that defendant executed an affidavit as a result of which plaintiff was arrested and held for trial in the circuit court after a preliminary hearing before a magistrate; and was placed on trial in the circuit court where he was discharged at the close of the state's evidence when the trial judge sustained his motion for a judgment of acquittal.

 Defendant's point with respect to his contention as to a submissible case is that plaintiff failed to prove the essential element of want of probable cause. Thus, we need not review the evidence to determine but may assume that plaintiff's evidence was sufficient to cause these other constituitive elements of an action for malicious prosecution to be jury issues, viz.,

the commencement of the prosecution of a proceeding against the present plaintiff, its legal causation by the present defendant, its determination in favor of present plaintiff, the presence of malice on the part of defendant, and damages to plaintiff by reason of the proceeding. Higgins v. Knickmeyer-Fleer Realty & Investment Co., 335 Mo. 1010, 74 S.W.2d 805, 812 [1–4]. In determining the question whether plaintiff's evidence was sufficient to make want of probable cause a jury question, we view the evidence in the light most favorable to plaintiff, give him the benefit of all reasonable inferences to be drawn therefrom and, of course, disregard defendant's evidence unfavorable to plaintiff. Hughes v. Aetna Ins. Co., Mo., 261 S.W. 2d 942, 945 [1–4].

In February 1956 plaintiff began to work for defendant on a farm in St. Charles County, became farm manager in May, and lived on the farm in a 2-story house. Plaintiff worked until July 1, 1957 when defendant hired a new manager. There had been no ill feeling between plaintiff and defendant, at least on plaintiff's part. Plaintiff left the farm, apparently on July 1, and went to Portageville, Missouri, and returned on July 3 to obtain his furniture and other property. With him were his wife and two men to assist in the move, Messrs. Kimes (who owned the truck) and Rhoda.

Plaintiff's house faced south with the kitchen at the southwest corner. A driveway ran east and west along the south side of the front yard. The driveway's north edge was about 20 feet from the kitchen door. Fourteen to 16 inches west of the west kitchen wall was a metal stand or frame which held two bottles, each containing (when full) 100 pounds of liquid petroleum, either butane or propane or a mixture of them. There was a valve at the opening of each bottle from which copper tubing extended to a regulator which served both bottles. One-fourth or $\frac{3}{8}$" copper tubing extended from the regulator through the west kitchen wall to a gas stove and a

water heater. On July 3 there was a small quantity of liquid petroleum in one bottle and the other was full. Plaintiff owned the contents and the bottles belonged to a dealer. After he discovered that he was leaving, he made arrangements to sell the contents to Marvin Lightfoot for $5 but, on the third, Lightfoot declined to purchase. Earl Price, who had replaced plaintiff as farm manager, offered $5 for the gas on behalf of defendant Coates, but plaintiff chose not to sell the gas to Coates for the use of Price.

Plaintiff removed his gas stove and placed it, along with other things, in the truck which was parked in the driveway about twenty feet from the kitchen door. After all of plaintiff's property had been removed from the house and all windows and outside doors had been closed, plaintiff disconnected the copper tubing which ran from the valve on each bottle to the regulator and then opened the valves so that the liquid petroleum from each bottle (in gaseous form) was caused to escape into the air. At that time there was a wind blowing from the south to the north which carried the gas away from the west side of the house and into the open fields to the north. No gas could or would enter the house under the circumstances existing at the time. Plaintiff knew that under proper conditions, i. e., when the right mixture of gas and air occurred, the gas would burn and that it was explosive. There was evidence from which the jury could reasonably have found that propane is 1½ times heavier than air and thus tends to drop to the ground; that an explosive mixture of propane and air is a mixture containing 2½ per cent to 9½ per cent propane gas in air—less than 2½ per cent or more than 9½ per cent propane would not constitute an explosive mixture; that at one point or exact time while the gas was escaping into the air from the bottles there would be an explosive mixture but generally, when the gas is in the open, there would be an excess of air and thus no explosive mixture; that the combustible ratio of propane is

23 cubic feet of air per cubic foot of propane, so that a mixture of 4 per cent propane and 96 per cent air will burn; that there is always a danger of combustion and explosion when propane gas is released into the open immediately adjoining a dwelling house at the time when there is an explosive or combustible mixture of propane and air, but that the gas released under the circumstances of the present case would tend to fall to the ground and the wind from the south would blow it northwardly into open space.

About 30 minutes after he had released the gas, plaintiff departed in the truck with his wife and the two who had accompanied him from Portageville. Plaintiff did not know whether the bottles were empty at that time but there was testimony that it would require approximately 30 minutes for all the gas in a full bottle to empty into the air. As plaintiff departed he met and waved to Billy Lightfoot who was traveling toward the house on a tractor and was then about 100 feet from it. Plaintiff continued on to Portageville, where he established his residence.

On July 9 while at work in a field he was arrested by a deputy sheriff of New Madrid County on a St. Charles County warrant charging him with an attempt to commit arson. He returned to St. Charles for a preliminary hearing, where he was represented by counsel, at the conclusion of which he was ordered to await the order of the Circuit Court of St. Charles County, and he gave a $1,000 bond for his appearance there. On April 23, 1958, he appeared in St. Charles for the trial of the case of the State of Missouri against himself on the charge of attempted arson, and, as we have heretofore noted, the trial judge sustained present plaintiff's motion for judgment of acquittal at the close of the state's evidence. He returned to southeast Missouri and at the time of the trial was residing in Rector, Arkansas.

When plaintiff arrived at the farm on July 3, Earl Price, the new farm manager, was there. Price and others, including

Billy Lightfoot and Dickie Coates, defendant's son, had soon (about 1½ hours prior to plaintiff's subsequent departure) gone to a field to grease some machinery. Apparently the Lightfoot boy had been sent to the house to obtain a jug of water. He heard a "spewing noise" and saw from a distance that the gas bottles were frosted. He returned to the field and reported the noise to Price. It took him about 15 minutes on the tractor to cover the distance. Price and defendant's son returned to the house on the tractor and, according to Price's testimony, which we shall later discuss, he turned off the gas, entered the house, put a cap over his mouth and nose because of the presence of gas, opened doors and windows, reported the incident to Mrs. Coates, and when defendant Coates arrived at the farm about 4 p. m. that same day reported the incident to him. Coates said, "I will fix him [referring to plaintiff]. I'll just swear out a warrant for the s— o— b— and have him arrested." (Bracketed insert ours.) On July 5 Coates visited the prosecuting attorney and signed and swore to this affidavit:

"Gordon R. Coates, being first duly sworn, states upon his oath that in the County of St. Charles, State of Missouri, on the 3rd day of July, 1957, one Henry Huffstutler did then and there wilfully and unlawfully and feloniously attempt to procure the burning of a two-store dwelling belonging to and being the property of Gordon R. Coates and Thelma B. Coates, by causing to be released within said dwelling combustible material and substance, namely, butane gas, with the intent that said butane gas would be ignited, thereby causing said dwelling to be exploded and burn."

Defendant's precise contention is that inasmuch as plaintiff's evidence showed that plaintiff was ordered by the examining magistrate, after a preliminary hearing, to be held to await the order of the circuit court, a presumption of probable cause thereby arose which could be overcome *only* by substantial evidence that the magistrate's order was procured by false testimony or other improper means; and that plaintiff not only failed to adduce any such evidence but, on the contrary, his evidence affirmatively showed that there was no false testimony at the preliminary hearing. Before stating the evidence pertinent to the foregoing, we wish to make clear that while we shall determine this case as though the rule as to overcoming the so-called presumption is as stated by defendant, we do so because plaintiff assumed that burden in submitting his case. By so doing, however, we do not necessarily subscribe to or affirm the proposition that the rule in this state is that a presumption which arises or a prima facie case of probable cause which is made by reason of an order of a magistrate binding over an accused to the circuit court is conclusive unless overcome *only* by evidence that the magistrate's order was obtained by false testimony or other improper means. In that connection we observe that the rule often repeated was set forth in the early case of Sharpe v. Johnston, 76 Mo. 660, 670, that: "When an indictment has been found by the grand jury or the defendant has been committed by the examining magistrate, this *prima facie* evidence of probable cause may be rebutted or overthrown by evidence showing that such indictment, or commitment, was obtained by false or fraudulent testimony, or other improper means, *or by evidence showing that the prosecutor, notwithstanding the action of the grand jury, or the committing magistrate, did not himself believe the defendant to be guilty.*" (Last italics the present writer's.) We have not found a Missouri case where the question of the effect of the binding over by a committing magistrate was factually involved. In passing, we call attention to the fact that in an annotation in 68 A.L.R.2d 1168, on the subject of the effect of a binding over or holding for trial by an examining magistrate as evidence of probable cause in malicious prosecution cases, the annotator, at page 1173, stated: "It is a general rule, at least by the numerical weight of authority, that

while an order committing, binding over, or holding an accused person for further proceedings is prima facie evidence of probable cause for the institution of the prosecution in which it is made, its effect as such may be overcome by the accused as plaintiff in an action for malicious prosecution against the complaining witness by producing evidence which, if believed, would show want of probable cause." Missouri is one of the states listed as supporting the foregoing general rule, and, among other cases, Sharpe v. Johnston, supra, is cited.

As noted, however, we shall, in this case, examine the evidence to determine whether plaintiff did adduce substantial evidence that the magistrate's order was procured by false testimony.

Plaintiff testified at the trial of this case that Coates testified at the preliminary hearing that plaintiff had released the gas *inside* the house. The jury was at liberty to find that that testimony was false for the reason that plaintiff's evidence in this case was to the effect that none of the gas was released inside the house, that the tubing through which it could have traveled into the house was disconnected, that the outside doors and windows were closed, and that a sufficient wind was blowing from south to north to have carried the gas completely away from the house. Plaintiff testified in this case that Coates testified at the preliminary hearing that butane gas would asphyxiate people. The jury could have found that such testimony was false because it is agreed that the gas involved would not asphyxiate anyone.

Plaintiff's wife testified in the present case that defendant Coates testified at the preliminary hearing that when he arrived on July 3 about 4 p. m., there "was gas in the house and around the house and all about the house." The jury reasonably could have found that such testimony was false in view of plaintiff's evidence in this case that substantially all of the gas released would have been blown away and dissipated by the wind and that the infer-

ence in Coates's statement that the farmhouse was practically enveloped in gas was not justified. Plaintiff's wife testified in this case that Coates had testified at the preliminary hearing that gas released in the manner plaintiff had released this gas outside the farmhouse would explode if anyone used the driveway in front of the house by driving thereon a tractor or truck, and that plaintiff released the gas with the intention that when he, Mr. Coates, or Mrs. Coates drove up with their car there would be a spark from their car's exhaust which would ignite the gas and cause an explosion and thereby burn the house and destroy the trucks and tractors; and plaintiff testified in this case that Coates stated at the preliminary hearing that any vehicle driving up and down in front of the house would explode and possibly kill whoever was driving it and burn or destroy the house and burn the hay and feed in the barn. The jury was at liberty to believe that such testimony was false because plaintiff's evidence was that no gas could reach the driveway on account of the wind and plaintiff's evidence with respect to the properties of the gas in question was such that the jury could have found that there was, at best, only a remote possibility of an explosion or fire by reason of the release of the gas under the circumstances related by plaintiff, and that it was not true that a vehicle *would* explode or burn and that the house *would* thereby be destroyed and the person driving the vehicle *would* be killed. And the jury reasonably could have found that such testimony produced a false impression on the magistrate as to plaintiff's intent in releasing the gas.

A. M. Kimes, who was the owner and driver of the truck used to move plaintiff's furniture, testified in this case that Coates stated at the preliminary hearing that plaintiff *released the gas to burn the house*. It is apparent that the jury was at liberty to find that the foregoing testimony at the preliminary hearing was false because plaintiff's own testimony and the surrounding circumstances amply supported a find-

ing that plaintiff had no intent to burn the house and that a reasonably cautious individual would not have believed that he did.

Leroy Rhoda, one of the men who was assisting plaintiff in the moving of his furniture, testified in this case that Coates had said at the preliminary hearing that when he arrived at 4 p. m. on the 3rd, gas was in the house and all around, and that a motor of any kind coming into the driveway would explode and burn. For reasons heretofore stated, the jury could find that this testimony by Coates was false.

■ The foregoing constituted substantial evidence that the order of the magistrate that plaintiff be held for the action of the circuit court was procured by false testimony.

■ Defendant's contention seems to be that because plaintiff submitted his case by an instruction which hypothesized conjunctively alleged false testimony allegedly given by both Coates and Price at the preliminary hearing, plaintiff failed to make a submissible case unless his evidence supported the hypothesis that Price's testimony was false, and that, inasmuch as Price was plaintiff's witness and testified that he stated the exact truth at the preliminary hearing, plaintiff failed to make a submissible case. It appears, however, that the necessary substantial evidence tending to show that the order of the committing magistrate was the result of false testimony could be supplied by evidence that Coates testified falsely, and, so far as concerns the question of submissibility, irrespective of whether Price's testimony at the preliminary hearing was or was not true. Furthermore, an examination of the testimony of plaintiff's witness Price will disclose that while he was plaintiff's witness plaintiff was not bound by his testimony but the jury could believe or disbelieve all or any part of his testimony. That is because the circumstances to be presently noted supported a reasonable inference that

Price's testimony at the preliminary hearing was in fact induced by defendant and because the jury could have found from other evidence adduced by plaintiff that Price's testimony at the preliminary hearing was false in certain respects.

■ Price testified at the present trial that after he had been subpoenaed for the preliminary hearing Coates visited him in the kitchen of the farmhouse and said to him, "You are going to testify for me * * * I won't tolerate any man that works for me that will doublecross me * * *." And that he further said that he (Price) "had a good job as manager as long as I wanted it, providing that I would testify for him." Price said further with respect to those statements by Coates, "I was behind the 8-ball and what could I do? I was working for the man and I testified for him." Price testified in the present case that Coates said, apparently on that same occasion, that he was going to "send the s— o— b— to the penitentiary." Price also said that Coates told him, and the inference is that it was prior to the preliminary hearing, "when Henry Huffstutler released this gas about the place that he was setting a trap to kill you or Mrs. Price or Mrs. Coates when you entered that house." And so it is that Price's testimony at the present trial as to what his testimony was at the preliminary hearing may be considered in the light of Price's statements that he testified for Coates in response to Coates's demand that he so do. Consequently, we have said that plaintiff was not bound by and the jury was not bound to believe Price's protestations that everything he stated at the preliminary hearing was true. Irrespective of all of that, however, Price testified at the present trial that he had said at the preliminary hearing that when he arrived at the house after being summoned by the Lightfoot boy the sun was shining on the bottles of gas but that in fact it was not, that those bottles were in the shade and were at the time partially frosted, and that he had said that what he saw in the house

was gas but that in fact he did not know whether it was, and that what he knew with respect to whether it was gas was based on what Coates told him.

A. M. Kimes testified at the present trial that Price said at the preliminary hearing that when he went into the house after arriving there on the 3rd he put a cap over his face and began to open doors and windows because the gas was stifling, the house was full of gas or fumes and looked like a light smoke or fog. The jury reasonably could have found Price's foregoing testimony was false because there was evidence that at least a half hour had elapsed between the time the gas was first released and the time Price arrived and that consequently all or most of the gas was out of the bottles and had been blown away, and that there could have been only an odor in the house which would have been there as a result of the odorizing agent placed in the invisible colorless gas; that consequently the gas would not have appeared as a light smoke or fog at the time Price entered the house.

Leroy Rhoda testified at the present trial that Price had testified at the preliminary hearing that if a motor vehicle of any kind came up the drive with its motor running that the gas would be ignited and would explode and start a fire. The jury was entitled to find that such testimony was false for the reasons heretofore stated and also because Price said at the present trial that he did not know anything about butane or propane gas and whether it could or could not be exploded by a spark.

Defendant relies upon three cases: Kvasnicka v. Montgomery Ward & Co., 350 Mo., 360, 166 S.W.2d 503; Higgins v. Knickmeyer-Fleer Realty & Investment Co., supra, and Bonzo v. Kroger Grocery & Baking Co., 344 Mo. 127, 125 S.W.2d 75. None of those cases are similar to the present case on their facts and none of the principles of law stated in them are contrary to the law we have applied to the facts of the present case. In the Bonzo and Kvasnicka cases the court held that the plaintiff had failed to adduce substantial evidence to overcome the prime facie probable cause, arising in the Kvasnicka case by reason of an indictment by a grand jury and in the Bonzo case by reason of an order after a hearing by a judge of the juvenile division that the accused be held to await the action of the grand jury. The Higgins case involved the voluntary dismissal by a prosecuting attorney of a prosecution set in motion by the defendant (in the malicious prosecution case) prior to a trial on the merits. The court there held that on the undisputed facts adduced by plaintiff there was no substantial evidence of lack of probable cause but that plaintiff's own evidence established probable cause.

In the present case, as we have heretofore demonstrated, not only was there substantial evidence that the order of the committing magistrate was procured by false testimony at the preliminary hearing, but it is apparent from the evidence stated most favorably to plaintiff that the jury reasonably could have found that Mr. Coates had no reasonable ground to believe or to charge that plaintiff's act in releasing the gas under the circumstances as he knew or should have known them to be was done with the criminal intent to burn the farmhouse.

■ Defendant contends that plaintiff's verdict-directing instruction P-1 was erroneous because it assumed that Coates *falsely and maliciously* made an affidavit and charged plaintiff with attempted arson rather than requiring the jury to find that he did so falsely and maliciously. There is no merit in that contention as reference to the language of the instruction will demonstrate. The instruction, after hypothesizing certain facts, proceeded: "and if you find and believe that the defendant Coates wilfully, maliciously and without probable cause did swear to and make affidavit in the Magistrate Court of St. Charles County, Missouri and did falsely, maliciously, and without probable cause therein charge the plaintiff, Huffstutler, with hav-

ing committed an attempted arson of the dwelling house * * *." It seems clear that the instruction does submit for a jury finding whether Coates did the things hypothesized maliciously and falsely and without probable cause and does not assume that he did so.

■ Defendant next contends that there was no evidence to support the hypothesis in the instruction that defendant induced Price to testify falsely. What we have said heretofore disposes of that contention adversely to defendant.

■ Defendant's final contention as to instruction P–1 is that it "improperly permitted and invited the jury to find that butane gas is not explosive although such conclusion was contrary to all the evidence in the case and contrary to scientific fact." The instruction contains this hypothesis: "and if you find that said Butane gas was an invisible substance after having been so released, and it was not combustible when so released, * * *." Apparently, however, defendant's complaint is not that the foregoing hypothesis, included as a conjunctive finding along with many others, was unsupported by evidence—his complaint is that the instruction improperly submitted the falsity of the testimony given at the preliminary hearing to the effect that butane "gas so released would have been ignited by persons operating motor vehicles and tractors in the driveway * *." In our view the hypotheses in the instruction permitting the jury to find that Coates and Price falsely testified at the preliminary hearing that the butane so released, i. e., if released as hypothesized in the forepart of the instruction, "would have been ignited by persons operating motor vehicles and tractors in the driveway outside and beyond the house, and explode such gas and burn said house," was supported by the evidence. Furthermore, we do not agree that such invited the jury to find that the gas was not explosive or combustible under certain conditions. It simply permitted the jury to find that, released as it

was and, as the evidence showed, immediately blown to the north away from the driveway, it would not have been ignited by the use of a motor vehicle in the driveway. Nor was the hypothesis that the gas "was not combustible when so released," unsupported by evidence or contrary to fact. It is true, as we have noted heretofore, that plaintiff's evidence showed that there was always some danger of explosion and combustion when propane is released into the air but, as also noted, the evidence, considered most favorably from plaintiff's standpoint, justified the jury's conclusion as submitted in the instruction that the gas, when released as it was released, was not combustible in the sense that it would not then burn because the evidence showed that no igniting agent was present at the time or place that any combustible mixture could have existed.

Defendant contends the trial court erred in giving instruction P–4. That instruction was: "The Court instructs the jury that the defendant cannot protect himself under the advice of counsel, unless the jury find and believe from the evidence that the defendant communicated to such counsel all the facts bearing upon the guilt or innocence of the accused in the criminal case which he knew, or by reasonable diligence could have ascertained; and you are therefore instructed that if you believe from the evidence that the defendant intentionally concealed or falsely represented or neglected to ascertain and advise said counsel of all the facts which he knew, or by the exercise of reasonable diligence could have ascertained, bearing on the innocence or guilt of the accused in said criminal case, then the advice of counsel is of no avail as a defense in this case."

Defendant's instruction D–6 was: "If you find and believe from the evidence that the defendant, Gordon Coates, consulted the Prosecuting Attorney in good faith and communicated to him all the ascertainable facts, and that the criminal proceeding was instituted on the advice of the Prosecuting

Attorney, then your verdict will be against the plaintiff and in favor of the defendant."

■ Defendant's first complaint is that instruction P–4 was not supported by the evidence in that there was no evidence that defendant concealed any material fact from the prosecuting attorney or falsely misrepresented any material fact to him. What we have said heretofore in connection with our discussion of the evidence as to whether there was a submissible issue of want of probable cause is sufficient without further discussion to rule that contention adversely to defendant.

■ Defendant also contends that the instruction erroneously fails to hypothesize the fact or facts which plaintiff claims was or were concealed or misrepresented to the prosecuting attorney. Defendant says that the same rule requiring the parties to hypothesize sufficient essential facts in verdict-directing instructions in negligence cases is applicable here. We do not agree. Instruction P–4 was in the nature of an explanatory or supplementary or, to some degree, a converse instruction in connection with the affirmative defense submitted by defendant's instruction D–6. Advice of counsel is of course an affirmative defense on which the defendant had the burden of proof. Hughes v. Aetna Ins. Co., supra, 261 S.W.2d 951. Instruction P–4 in reality did nothing more than to state in different form the same law set forth in defendant's instruction D–6. We are of the opinion, therefore, that it was not necessary for plaintiff in his instruction to have hypothesized the ascertainable facts which the jury could have found were not related by defendant to counsel.

■ Defendant's final complaint as to instruction P–4 is that it improperly deprived defendant of the legal defense that he acted on the advice of counsel. Defendant's supporting argument is that the instruction did not properly set forth the "controlling law" as to the defense and did not limit the jury's consideration to the

pertinent facts which plaintiff claimed were shown by the evidence. In addition to what we have stated above with respect to the form of the instruction, it is a sufficient answer to add that the defense (advice of counsel) being an affirmative one on which defendant had the burden of proof, it was encumbent upon defendant to include in his instruction the "controlling law" and if defendant wished to specifically tell the jury that in considering plaintiff's instruction P–4 it was to take into account only the pertinent facts shown by the evidence, it was defendant's duty to so do.

In our view, instruction P–4 did not misdirect the jury and when considered with defendant's instruction D–6 we think it was not reversibly erroneous for any of the reasons advanced by defendant.

■ Instruction P–5 undertook to define "malice in fact" and "malice in law" and to apply the definitions to the facts. In so doing, it hypothesized whether the institution of a "prosecution" was by reason of defendant's ill will against plaintiff "or that said *prosecution or prosecutions* were wrongfully or intentionally caused by him, without legal justification or probable cause, then the jury should, as against such defendant, find that such *prosecution or prosecutions* were malicious." (Our italics.) Defendant says the instruction is reversibly erroneous because it is confusing and misleading in that it referred to "prosecutions" when there was but one prosecution. Surely the jury understood that *prosecutions* could only have referred to the preliminary hearing and to the trial in the circuit court, and the phrase "prosecution or prosecutions" included those two events, whether considered as one proceeding or as two. There is no reasonable basis for contending that the jury was thereby misled. The only case cited by defendant in support of his contention is Luft v. Strobel, 322 Mo. 955, 19 S.W.2d 721, 731 [7]. That case involved a verdict-directing instruction which was confusing and misleading in several particulars pointed out by the court.

That opinion is in no material way applicable in the consideration of present instruction P–5.

■■■■ Defendant contends the trial court erred in refusing to give instruction D–8. That instruction was: "The court instructs the jury that if you find and believe from the evidence that the defendant, Gordon R. Coates was not actuated by malice in the prosecution against the plaintiff, then your verdict must be against the plaintiff and in favor of the defendant." Defendant points out and cites cases to support the well-established proposition that defendant is entitled to an instruction which converses one or more of the essential elements of plaintiff's case. But neither the correctness of that rule nor the fact that instruction D–8 does converse the essential element of malice makes the refusal of the trial court to give the instruction reversible error. In the first place, inasmuch as malice may be inferred from a showing of want of probable cause, Hughes v. Aetna Ins. Co., supra, 261 S.W. 2d 945 [1–4], the trial court should not be convicted of error in refusing to give the instruction for the reason that the trial court was justified in believing that it did not constitute a satisfactory or adequate instruction conversing the essential element of malice. But secondly, and more important, is the fact that the jury was adequately advised by other instructions that unless it found that Coates acted maliciously as well as without probable cause its verdict should be for defendant. Instruction D–2 told the jury that the burden was on the plaintiff to prove by a preponderance of the evidence that Coates prosecuted plaintiff for attempted arson without probable cause and maliciously, and that unless plaintiff so proved, the jury was to find a defendant's verdict. Instruction D–7 told the jury that the issue was not whether plaintiff was guilty of attempted arson, but whether "from the facts and circumstances given in evidence, the defendant, Gordon R. Coates, acted maliciously and without probable cause." As has been heretofore

noted, instruction P–1 made it clear that to find for plaintiff the jury had to find that defendant was actuated by malice in the prosecution against plaintiff. And instruction P–5, to which we have heretofore referred, required the jury to find, in order to find that the prosecution was malicious, that it was wrongfully or intentionally caused by defendant without legal justification or probable cause or was actuated by the ill will of defendant against plaintiff. In view of the fact that it seems apparent that the jury would have understood from the instructions, considered as a whole, that it could not find for plaintiff unless it found that defendant was actuated by malice in the prosecution against plaintiff, we hold that the refusal of the trial court to give instruction D–8 was not reversible error.

■■■■ Defendant next contends that plaintiff's conduct in allegedly "kindling passion and prejudice by improper reference to defendant's supposed wealth, in disregard of the trial court's rulings" constituted reversible error. The three portions of the record to which we are referred in support of that contention do not sustain the defendant. On cross-examination of the defendant, plaintiff's counsel was inquiring as to defendant's wealth and assets. That was a legitimate subject of inquiry in view of plaintiff's prayer for punitive damages. He asked defendant how many Cadillacs he owned. Defendant said, "None." There was no objection. With respect to a further question as to Cadillacs, the only objection made was sustained and no further relief was requested. During the cross-examination of defendant's wife, plaintiff's counsel was asking about the details of the visit Mrs. Coates made to the farmhouse upon being informed by Earl Price that plaintiff had released the gas. Mrs. Coates said she drove her own car from her residence to the farmhouse. Counsel asked whether the car was a Cadillac. After Mrs. Coates had answered that she did not remember what it was, there was an objection. That late objection was sustained. The question was

then asked whether she drove a Cadillac which was registered in her name, to which question an objection was sustained, and no further request for relief was made. The third and final incident occurred during the redirect examination of plaintiff's witness Price. The question was asked whether, when Price quit working at the farm, Mr. Coates had paid what he owed him. An objection was made and sustained, and no further relief was requested. The foregoing record excerpts conclusively demonstrate that defendant's contention that any or all of the incidents constituted an improper appeal to the passion and prejudice of the jury is without merit.

■ Defendant's final contention is that the verdict is excessive. Plaintiff testified that he had never before been arrested or convicted of a felony; that as a result of the arrest he appeared in St. Charles at the preliminary hearing and again for the trial in the circuit court; that he hired counsel in both instances and that the amount he paid for counsel fees and expenses and for the expenses of witnesses amounted to $500; that the charge against him and his arrest caused him to be "pretty well shook up and scared. I was worried * * * as to what would happen"; that as a result he could not do his work very well and could not rest very well. A period of ten months elapsed between the time of his arrest and his directed acquittal. The penalty on conviction for attempted arson is two to five years in the penitentiary. Section 560.035 RSMo 1949 V.A. M.S. In Carp v. Queen Ins. Co., 203 Mo. 295, 360, 101 S.W. 78, 99, an action for malicious prosecution, the court said, "The law concedes a wide latitude of discretion to the jury in actions of this class * * *. Numerous considerations must necessarily enter into the question of what is just compensation in such a case, but no definite rule can be laid down to any of them. The law has provided that the jury shall decide this question. Disgrace is a relative term. What is such to one man is not necessarily so to another; and, while it applies to each, its effect or measure is great or small as other conditions exist. Mental anxiety and pain caused thereby, and humiliation and danger from a prosecution for a grave criminal offense, are all conditions for the jury, as well as the jeopardy in which the liberty of the plaintiff was placed by such prosecution."

Applying the above-stated criteria to the facts in this case and taking into account the fact that an able trial judge considered and rejected defendant's same contention as to excessiveness, we are of the opinion that we should not interfere with the amount of the judgment.

Defendant cites three cases in support of his contention that the verdict is excessive. In all the verdicts were relatively small, but in one the only holding by the court was that the verdict was not excessive; in another the only holding was that the verdict was not the result of bias, passion, and prejudice; and in the third it was held that where the verdict for actual damages was $500, $2,500 punitive damages was, under the particular circumstances, excessive, and the judgment for punitive damages was reduced to $1,000. None of those cases support the contention that the judgment in this case is excessive.

As tending to support the view that the judgment is not excessive, see Coffman v. Shell Petroleum Corp., 228 Mo.App. 727, 71 S.W.2d 97, 106 [12] [13], and Irons v. American Railway Express Co., 318 Mo. 318, 338, 300 S.W. 283, 292 [18].

The judgment is affirmed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.