**William ULMER, Appellant,**

v.

**ASSOCIATED DRY GOODS
CORPORATION, Appellee.**

No. 86–2292.

United States Court of Appeals,
Eighth Circuit.

Submitted April 17, 1987.

Decided July 20, 1987.

Daniel P. Finney, Jr., St. Louis, Mo., for appellant.

Eugene K. Buckley, St. Louis, Mo., for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

BRIGHT, Senior Circuit Judge.

William Ulmer brought this action against defendant Associated Dry Goods Corporation (Corporation), former operator of retail stores in the St. Louis, Missouri, area, asserting that the Corporation maliciously initiated a criminal charge of peace disturbance against him after he vocally protested his arrest by a Corporation security guard in a Corporation store. A jury denied Ulmer recovery and he appeals from the judgment of dismissal entered by the district court upon the jury verdict. We reverse and remand for a new trial.

On appeal, Ulmer claims, *inter alia*, that the district court erred in (1) excluding any and all evidence of the circumstances of his arrest by a Corporation security officer or his subsequent prosecution for peace disturbance, thereby preventing him from proving two elements of a malicious prosecution action, absence of probable cause and malice; (2) submitting a jury instruction defining "reasonable grounds" for in-

stigating prosecution which required consideration of his guilt or innocence of the offense charged, an issue upon which the court excluded all evidence; (3) commenting upon and misstating the law regarding the existence of probable cause to the jury; and (4) excluding all evidence of Ulmer's later prosecution by the Corporation for assault in the third degree.

## I. BACKGROUND

Associated Dry Goods is a corporation organized under the laws of Virginia which, until 1984, operated a chain of retail stores in the St. Louis area by the name of Stix, Baer and Fuller. William Ulmer is a resident of St. Louis, Missouri, who, at the time of the events leading to this lawsuit, was employed by the Corporation. Ulmer worked in the Corporation's retail credit department at a Stix, Baer and Fuller store located in a different location from the place where the events in issue took place.

On January 19, 1983, Ulmer was arrested and taken into custody at the South County Stix, Baer and Fuller store by Richard Putnam, a security guard employed by the Corporation. Ulmer was apprehended in the men's restroom where the store had previously been experiencing a security problem. Upon being apprehended, Ulmer immediately, and in a loud voice, requested that someone call the store manager or the police.

The morning following his arrest, Ulmer met with his supervisor and Robert Armentrout, the Corporation's Manager of Fair Employment Practices. Armentrout offered to drop charges against Ulmer if he agreed to release the store from any liability possibly arising out of his arrest. Ulmer testified at trial that Armentrout threatened to press charges against him if he did not sign a preprinted form releasing the store from liability or resign. Ulmer refused to either sign or resign.

Approximately one week later, Ulmer received a letter of discharge from his job with the Corporation. The letter stated no reasons for the termination. In preparing for possible legal action against the Corporation, Ulmer arranged for a friend to visit the South County store to obtain witnesses to his arrest. During his friend's visit, security guard Putnam was made aware of his presence in the store.

Shortly thereafter, Ulmer received a warrant for his arrest. Based upon a complaint filed with the St. Louis Associate Circuit Court and signed by Richard Putnam, the St. Louis County prosecuting attorney charged Ulmer with the Class A misdemeanor of peace disturbance. The alleged victim of the peace disturbance was Tammy Sutton, an employee of the South County store who overheard Ulmer's shouts upon his arrest. The warrant stated that Ulmer "unreasonably and knowingly caused alarm to Tammy Sutton by loud and unusual noise and/or fighting with Rich Putnam." Associate Circuit Judge Eberwine signed the warrant which related in the printed form that, "[u]pon consideration of the facts presented the court hereby finds that probable cause exists to issue a warrant and arrest warrant herein." After interviewing Tammy Sutton, the prosecuting attorney dismissed the charges by entering a memorandum of nolle prosequi on April 18, 1983.

Several weeks after the dismissal of the peace disturbance charge and at the insistence of management, the Corporation levied a second charge against Ulmer arising from his arrest at the South County store. This time the St. Louis County Prosecuting Attorney's Office charged Ulmer with the Class C misdemeanor of assault in the third degree, apparently arising out of the altercation or struggle he had had with Putnam at the time of his arrest. In January of 1985, this charge was also dismissed by a memorandum of nolle prosequi.

As a result of his prosecution, Ulmer filed a complaint against the Corporation, claiming malicious prosecution and alleging damages, including approximately $10,000 in lost wages for eleven months unemployment, $750 in attorneys' fees to defend himself against the peace disturbance charge, and an unspecified amount for mental anguish caused by the uncertainty of a possible six-month jail sentence.

The record reveals that prior to trial, the district court granted the Corporation's mo-

tion in limine, excluding "testimony of other men relating to occurrences similar to the plaintiff's arrest; defendant's policy for quota arrests; defendant's policy for forced confessions; and the circumstances of the plaintiff's arrest * * *." At the beginning of trial, Ulmer made an offer of proof, requesting leave to present evidence denied by the court's grant of defendant's motion in limine.

Ulmer claimed that the evidence he would introduce, if permitted, would first prove that Putnam did not have probable cause for his arrest, but rather arrested him only because he was obligated to fulfill his quota for arrests. Ulmer sought to introduce evidence that the Corporation required its security guards to make two arrests per week, and that the guards actually made approximately two arrests per week. Ulmer further sought to present evidence that his arrest was Putnam's fiftieth arrest within a twenty-five-week period. Ulmer claimed Putnam was to be evaluated the next week and that management considered the number of arrests a security guard secured during each guard's evaluation.

Ulmer also claimed that the evidence he would introduce, if permitted, would prove that he was prosecuted solely because of the Corporation's fear of a civil lawsuit. In an effort to protect the Corporation from civil liability, Ulmer claimed Corporation management forced every person arrested by their security staff to sign, under threat of prosecution, either a confession or a release of liability. To prove this, Ulmer claimed he would introduce the testimony of one Charles Montgomery who, after being arrested by a Corporation security guard, signed a confession dictated to him by the arresting guard. Ulmer claimed Montgomery would testify that after he returned to the store a month later to ask for the names of witnesses, the Corporation's Regional Director of Security, James Shelvy, ordered a security guard to take measures to procure a warrant for Montgomery's arrest.

The court rejected Ulmer's offer of proof, ruling that evidence as to the man-

ner of arrest and its underlying circumstances, while relevant to an action for false arrest (not alleged in this case), was not relevant to an action for malicious prosecution. Thereafter, in addition to rejecting specific items of evidence mentioned in the offer of proof, the court sustained each of the Corporation's objections to Ulmer's attempts to introduce evidence relating to the circumstances surrounding his arrest. Thus, the trial court's rulings barred Ulmer from testifying to any of the events relating to his arrest.

In addition, Ulmer was not permitted to introduce evidence of the events surrounding his prosecutions for peace disturbance and assault in the third degree. Ulmer was not permitted to question Steve Goldman, Chief Trial Assistant for the St. Louis County Prosecuting Attorney's Office, concerning why his office charged Ulmer with peace disturbance or why his office eventually dismissed the charge. Ulmer was furthermore not permitted to question Putnam as to the existence of a Corporation policy of avoiding civil suits. The trial court ruled that because Ulmer had pleaded malicious prosecution only in the Corporation's efforts to prosecute him for peace disturbance, he could not present evidence of the Corporation's later attempts to prosecute him for third-degree assault.

Nevertheless, Ulmer did introduce some evidence of a lack of probable cause for his arrest and the existence of malice. Richard Putnam testified that he had observed no crime being committed by Ulmer in the men's restroom, but detained Ulmer only because he was suspicious and wished to question him. Putnam further testified that his supervisor, James Shelvy, authorized him to contact the police after the arrest because Shelvy was irritated with the men's room problem. Putnam testified that a day or two after the arrest, Shelvy instructed him to get a warrant for Ulmer's arrest because Ulmer had refused to resign. Putnam furthermore testified that his supervisor, Terry Boal, tore up the apprehension report he had prepared the night of the arrest and proceeded to prepare a second report, adding material not present in his original report that he in fact

told Boal did not happen. He testified that Boal had said that "she did not wish to be sued along with Associated Dry Goods." According to Putnam, Shelvy instructed him to initiate whatever charges against Ulmer the prosecuting attorney would consent to issue. He claimed Shelvy further told him to "go out and get the prosecution" so that the Corporation "would not have to worry about a lawsuit." Putnam testified that the prosecuting attorney refused to issue charges against Ulmer for anything relating to the men's room after hearing Putnam's account of what he observed prior to arresting Ulmer in the store, but did consent to issue a charge for peace disturbance.

Steve Goldman testified that Judge Eberwine, when signing the arrest warrant, had no actual knowledge of any of the facts underlying the peace disturbance charge upon which to base his finding of probable cause other than those contained in the complaint and sworn to by Putnam. The complaint merely stated the bare allegation that Ulmer, prior to the arrest, had knowingly caused alarm to Tammy Sutton. Goldman also testified that Tammy Sutton was not interviewed by a prosecuting attorney prior to the issuance of the warrant.

Witnesses for the Corporation disputed much of Putnam's testimony. Putnam was no longer an employee of the Corporation at the time of trial.

## II. DISCUSSION

### A. Exclusion of Evidence Relative to Defendant's Determination of Probable Cause

■ Ulmer first claims that the district court erred in excluding all evidence relevant to the circumstances underlying his arrest and subsequent prosecution for peace disturbance. He claims that without such relevant and probative evidence, the jury was unable to determine if the defendant acted without probable cause, an essential element of a prima facie case for malicious prosecution. Contrary to the Corporation's assertions during trial and on appeal, Ulmer furthermore argues that a judge's finding of probable cause is rebuttable when the information is based solely upon the affidavit of a complaining witness. Finally, Ulmer argues that the district court erred in excluding evidence of the circumstances underlying the store's decision to prosecute him because this evidence is relative to the element of malice in a prima facie case of malicious prosecution.

We agree. Clearly, much of the excluded evidence related to the issue of probable cause and malice. Under Missouri law, which governs this diversity suit, probable cause is one of the six elements of an action for malicious prosecution. Those elements are: "(1) commencement of prosecution of the original proceeding against the present plaintiff; (2) defendant's legal causation of the proceedings against the present plaintiff; (3) termination of the proceedings in favor of the present plaintiff; (4) absence of probable cause for such proceedings; (5) presence of malice therein; and (6) damage to plaintiff by reason thereof." *Hamilton v. Krey Packing Co.*, 602 S.W.2d 879, 881 (Mo.App.1980) (quoting *Palermo v. Cottom*, 525 S.W.2d 758, 763 (Mo.App.1975)). Case authority holds that it is customary, and indeed necessary, to present evidence of the want or existence of probable cause to the jury. "It is customary * * * in malicious prosecution cases to consider all the circumstances preliminary to and surrounding the institution of the prosecution." *Boquist v. Montgomery Ward & Co.*, 516 S.W.2d 769, 773 (Mo.App.1974). *See also Hoene v. Associated Dry Goods Corp.*, 487 S.W.2d 479, 483–84 (Mo.1972); *Huffstutler v. Coates*, 335 S.W.2d 70, 76 (Mo.1960); *Randol v. Kline's, Inc.*, 49 S.W.2d 112, 114–15 (Mo.1932). Furthermore, Missouri courts hold that the existence or want of probable cause is an issue for the jury to decide. *See Hoene*, 487 S.W.2d at 484; *Randol*, 49 S.W.2d at 114.

The district court's reliance upon *Brown v. Jones Store*, 493 S.W.2d 39 (Mo.App.1973), for its ruling excluding evidence related to Ulmer's arrest was misplaced. In that case, the court held that the submission of two jury instructions, allowing the jury to consider liability for false arrest and malicious prosecution separately, was proper because "false arrest and malicious prosecution are

different wrongs, * * * requir[ing] a separate factual proof, * * *." *Id.* at 41. That false arrest and malicious prosecution are separate causes of action does not mean that they do not share common elements. The court in *Brown* merely sought to prevent the defendant in that case from being held liable for both causes of action upon identical proof. As the court stated in *Boquist,* "[the] defendant errs in its assumption that the allegations pertaining to matters preliminary to the instigation of prosecution interjected a separate cause of action for false arrest independent of the cause of action for malicious prosecution." 516 S.W.2d at 773.

The Corporation supports the district court's decision on alternative grounds, however. It claims that the evidence was properly excluded because Judge Eberwine's signed statement conclusively established the existence of probable cause for Ulmer's arrest. Ulmer argues that no prima facie case of probable cause was so established, and even if it was, he was entitled to introduce evidence to rebut it.

The origins of Missouri's case law on this issue may be traced to a 1907 case, *Pinson v. Campbell,* 124 Mo.App. 260, 101 S.W. 621 (1907). That case stated:

> The finding of an indictment by a grand jury, or the commitment of an examining magistrate, is prima facie evidence of probable cause. On parity of reason, the filing of an information by a prosecuting attorney on his own information and belief is prima facie evidence of probable cause, but not so when the information is predicated on the affidavit of the complaining witness.

*Id.* at 624 (citation omitted). *See also Marcum v. Sagehorn,* 660 S.W.2d 426, 428 (Mo.App.1983); *Hamilton,* 602 S.W.2d at 882;

*Moad v. Pioneer Finance Co.,* 496 S.W.2d 794, 798 (Mo.1973); *Huffstutler,* 335 S.W.2d at 75–76; *Mannisto v. Rainen Furniture Co.,* 295 S.W.2d 841, 845 (Mo.App. 1956); *Harper v. St. Joseph Lead Co.,* 361 Mo. 129, 140, 233 S.W.2d 835, 840 (1950); *Randol,* 49 S.W.2d at 114. Also, "[a] judgment or finding in favor of plaintiff in the original action is conclusive evidence of probable cause, or estops defendant therein from denying the existence of probable cause, in the absence of fraud or other improper means used in obtaining the judgment * * *." *Bonzo v. Kroger Grocery & Baking Co.,* 344 Mo. 127, 133, 125 S.W.2d 75, 78 (1939). A plaintiff may rebut the prima facie case of probable cause established by the grand jury's indictment or the commitment of an examining magistrate. As stated by one court,

> The foregoing prima facie showing of the presence of probable cause as made by plaintiff stands conclusive unless overcome by evidence that false testimony was the basis of the charge and that the falsity, if so, was discoverable upon reasonable investigation. *Kvasnicka v. Montgomery Ward & Co.,* 350 Mo. 360, 166 S.W.2d 503, 510, 515 (1942).

*Moad,* 496 S.W.2d at 799. *See also Marcum,* 660 S.W.2d at 428; *Hamilton,* 602 S.W.2d at 882; *Huffstutler,* 335 S.W.2d at 76.

Under *Pinson,* because the prosecuting attorney's information was predicated upon the affidavit of the complaining witness, Richard Putnam, the information does not constitute prima facie evidence of probable cause. No Missouri case found discusses whether a judge's finding of probable cause establishes a prima facie case where that finding rests ultimately upon the affidavit of a complaining witness.[1] Here,

---

1. Our research revealed cases where the prima facie case of probable cause was established by a grand jury's indictment, the commitment of an examining magistrate or the respective affidavit or finding of a prosecuting attorney or judge upon personal investigation. *See, e.g., Hamilton v. Krey Packing Co.,* 602 S.W.2d 879, 882 (Mo.App.1980) (prosecuting attorney sworn information based on personal belief); *Moad v. Pioneer Finance Co.,* 496 S.W.2d 794, 799 (Mo.1973) (prosecuting attorney's personal affida-

vit based on personal investigation that the facts of the complaint were true); *Huffstutler v. Coates,* 335 S.W.2d 70 (Mo.1960) (commitment of examining magistrate); *Mannisto v. Rainen Furniture Co.,* 295 S.W.2d 841, 845 (Mo.App.1956) (commitment of examining magistrate); *Harper v. St. Joseph Lead Co.,* 361 Mo. 129, 233 S.W.2d 835, 840 (1950) (indictment by grand jury); *Kvasnicka v. Montgomery Ward & Co.,* 350 Mo. 360, 166 S.W.2d 503, 505 (1942) (indictment by grand jury); *Bonzo v. Kroger Grocery & Baking Co.,*

Judge Eberwine's finding of probable cause, although allegedly resting upon "consideration of facts presented to the court", rested upon the prosecuting attorney's sworn information which was itself based upon the affidavit of the complaining witness Richard Putnam.

We need not decide this legal issue, however, because the district court improperly prevented Ulmer from rebutting any prima facie case of probable cause Judge Eberwine's finding may have established. As stated earlier, Ulmer was prevented from introducing virtually any evidence of the circumstances surrounding his arrest and prosecution for peace disturbance to prove the absence of probable cause. Much of the evidence he sought to introduce would have had a bearing upon whether the basis of the charge, Putnam's sworn statement that Ulmer "unreasonably and knowingly caused alarm to Tammy Sutton by loud and unusual noises and/or fighting," was false and reasonably discoverable by the Corporation to have been false. This evidence, which was properly admissible, included the store policy requiring security guards to make two arrests per week, proof that Ulmer was Putnam's fiftieth arrest in a twenty-five-week period, and proof that Ulmer's arrest immediately preceded Putnam's evaluation. Ulmer was thus furthermore improperly prevented from questioning Putnam on the relevant issue of the existence of a company policy of avoiding legal claims, and improperly prevented from questioning Steve Goldman, Chief Trial Assistant for the St. Louis County Prosecuting Attorney's Office, as to why the prosecuting attorney charged Ulmer with peace disturbance and why it later dismissed the charge.

■ We agree with the district court's exclusion of Charles Montgomery's testimony, however. According to Ulmer, Charles Montgomery was subject to the same treatment by the Corporation that Ulmer claims demonstrates that the Corporation adheres to a scheme to avoid civil liability for illegal arrests. However, the district court did not abuse its discretion in excluding such testimony that would inevitably compel the court to explore the collateral issue of the circumstances surrounding Montgomery's arrest. *See Crimm v. Missouri Pac. R.R. Co.*, 750 F.2d 703, 708 (8th Cir.1984).

We cannot say that the testimony Ulmer was able to solicit from Putnam concerning the absence of probable cause gave Ulmer an adequate opportunity to rebut the prima facie case of probable cause which may have been established by Judge Eberwine's finding. This testimony, interspersed with objections, established only that Putnam had not seen Ulmer commit an offense, that Putnam had arrested Ulmer because he had suspicions about Ulmer's behavior, that Terry Boal wrote the final apprehension report, and that this report contained descriptions of events Putnam told Boal had not occurred.

Thus, a review of the record reveals that the district court's exclusion of nearly all evidence of the circumstances underlying Ulmer's arrest and prosecution prevented Ulmer from establishing fully all elements of his claim. In removing evidence relevant to a determination of the absence of probable cause from the jury, the district court also prevented the jury from determining the presence of malice. "Where want of probable cause is shown, malice may be inferred by the jury." *Hoene,* 487 S.W.2d at 483; *Stubbs v. Mulholland,* 168 Mo. 47, 67 S.W. 650, 658 (1902). Thus, the jury could not review the evidence necessary for it to determine the existence of a want of probable cause and malice, two essential elements of a prima facie case of malicious prosecution. Such exclusion was clearly erroneous.[2]

344 Mo. 127, 125 S.W.2d 75, 76 (1939) (circuit court finding after a full hearing); *Dawes v. Starrett,* 336 Mo. 897, 82 S.W.2d 43, 45 (1935) (indictment by grand jury).

**2.** We thus reject the Corporation's argument on appeal that Ulmer failed to preserve his conten-

tion that the district court erred in sustaining its motion *in limine* due to an inadequate offer of proof. The Corporation did not object to the sufficiency of the offer of proof at trial. The purpose of an offer of proof is to inform the court and opposing counsel of the substance of the excluded evidence and to provide the appel-

## B. Jury Instruction Issue

■ Ulmer claims the district court erred in submitting the following jury instruction:

> The phrase "reasonable grounds" as used in these instructions means the existence of facts which would warrant an ordinarily cautious and prudent person in believing plaintiff, William Ulmer, was guilty of the offense charged.

> In order for Putnam to have reasonable grounds to instigate the prosecution, it is not necessary that plaintiff in fact be guilty of said offense.

Ulmer argues that the language in the second paragraph injected additional elements into the case, namely Ulmer's guilt or innocence of the peace disturbance charge, where, due to the district court's ruling, no evidence of the underlying circumstances of the arrest had been introduced.

The paragraph in question does not misstate the law, and thus in our view, is not error.[3] Probable cause does not require proof that the suspect is actually guilty of the offense charged. *See, e.g., State v. Moore,* 659 S.W.2d 252, 257 (Mo.App.1983); *State v. Garrett,* 627 S.W.2d 635, 641 (Mo.), *cert. denied,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982).

## C. Exclusion of Evidence Regarding Prosecution for Assault in the Third Degree

■ Ulmer argues that the district court erred in excluding all evidence of his subsequent prosecution, at the bequest of the Corporation, for assault in the third degree. Issuance of this second charge followed the prosecuting attorney's dismissal of the peace disturbance charge. As discussed above, the district court excluded evidence relating to this second prosecution because it lay outside the scope of Ulmer's pleadings which, according to the court, were limited to the Corporation's actions in prosecuting him for peace disturbance. Ulmer claims that because his second amended complaint states the criminal charge of malicious prosecution was dismissed in January 1985, the date the assault charges were dismissed (the peace disturbance charges being dismissed two years previously), he adequately pleaded his claim for malicious prosecution for third-degree assault.

The district court was correct in determining Ulmer's complaint did not adequately plead malicious prosecution for assault in the third degree. The complaint does not mention this offense and refers to the peace disturbance charge when it states "the criminal charge" against him was dismissed in January of 1985.

Nevertheless, evidence that the Corporation instigated prosecution against Ulmer for assault in the third degree was relevant to Ulmer's claim he was maliciously prosecuted for peace disturbance and thus its exclusion was error. Considering that the Corporation instigated this second charge a few weeks after the prosecutor dismissed the peace disturbance charge and that the charge was based upon the same incident as the peace disturbance charge, Ulmer's

---

late court with a record sufficient to allow it to determine if the exclusion was erroneous. *State v. Spulak,* 720 S.W.2d 396 (Mo.1986). The record reveals that despite its brevity, Ulmer's offer of proof adequately fulfilled these two purposes.

3. Although the second paragraph of the instruction submitted is not part of Missouri's approved jury instruction, *see* MAI 16.05, federal courts sitting in diversity need not instruct specifically in terms of state pattern jury instructions. *See Monger v. Cessna Aircraft Co.,* 812 F.2d 402, 408–09 (8th Cir.1987) (Bright, J., concurring). In accordance with the rule of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), state law controls the substance of jury instructions submitted by federal courts sitting in diversity. Federal law, however, determines the grant or denial of instructions as a procedural matter. *Id. See also In Re Air Crash Disaster Near Chicago, Ill.,* 701 F.2d 1189, 1199–1200 (7th Cir.), *cert. denied,* 464 U.S. 866, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983); *Hrzenak v. White-Westinghouse Appliance Co.,* 682 F.2d 714, 719 (8th Cir.1982). Thus, the trial court was not required to omit the second paragraph of the submitted instruction even though the disputed paragraph is not in the MAI.

We would note, however, that language similar to that contained in the second paragraph of this instruction was specifically rejected by one Missouri court as argumentative. *See Boquist v. Montgomery Ward & Co.,* 516 S.W.2d 769, 776 (Mo.App.1974).

behavior upon arrest by Richard Putnam, evidence of the prosecution was probative of whether the Corporation had reasonable grounds upon which to prosecute Ulmer for peace disturbance in the first place or whether it prosecuted him solely out of malice. *See Lovejoy v. Goodrich*, 798 F.2d 1201, 1204 (8th Cir.1986) (evidence may not be excluded only because it is not pleaded).

Appellant's remaining arguments for reversal lack merit.

## III. CONCLUSION

Accordingly, we reverse and remand for a new trial. On remand, the appellant shall be permitted to introduce the evidence of the facts underlying the circumstances of his arrest as the basis for his action for malicious prosecution.