NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued November 3, 2006
Decided February 12, 2007

Before

**Hon.** FRANK H. EASTERBROOK, Chief Judge

**Hon.** JOEL M. FLAUM, Circuit Judge

**Hon.** ANN CLAIRE WILLIAMS, Circuit Judge

No. 05-4495

ROGER LATTA and JACQUELINE LATTA,
 *Plaintiffs-Appellants*,

   *v.*

WALTER CHAPALA, *et al.*,
 *Defendants-Appellees*.

Appeal from the United States District Court for the Northern District of Indiana, Hammond Division.

No. 2:03-CV-41
Rudy Lozano, *Judge*.

## Order

On February 14, 1989, the house of Roger and Jacqueline Latta burned down. Their son Brad, age 2, died in the blaze. Investigators decided that the fire was deliberate and that the Lattas had set the blaze. A jury convicted them of arson and, because of Brad's death, felony murder. The convictions were affirmed on direct appeal. After the Lattas had served 11 years in prison, however, the Supreme Court of Indiana held that they were entitled to collateral relief because their lawyer had furnished ineffective assistance. *Latta v. State*, 743 N.E.2d 1121 (Ind. 2001). The prosecutor decided against retrial, and the Lattas were freed.

They then filed suit under 42 U.S.C. §1983 against almost everyone associated with the prosecution—units of state and local government, investigators, prosecutors, and witnesses (including technical experts), 21 defendants in total. The district court dismissed all of the Lattas' claims in a series of opinions running well over 100 pages, and the Lattas have appealed with respect to eight of the defendants. We

affirm the judgment and see no need to recapitulate the district court's analysis, though we add a few comments.

Although the district court concluded that some of the Lattas' claims are barred by the statute of limitations, there is no need for us to address this issue, as all of the claims in question also are covered by immunity or unavailing on the merits. The grant of certiorari in *Wallace v. Kato*, 126 S. Ct. 2891 (2006) (argued Nov. 6, 2006), makes it prudent to decide this appeal on other grounds, so that disposition can be final no matter what happens in *Wallace*.

Second, although the district court found that prosecutors and witnesses were protected by principles of qualified rather than absolute immunity, we think that the better conclusion is that absolute immunity applies. Absolute immunity applies to prosecutorial decisions and acts. See *Imbler v. Pachtman*, 424 U.S. 409 (1976). Witnesses at trial likewise possess absolute immunity in actions under §1983. See *Briscoe v. LaHue*, 460 U.S. 325 (1983). None of the witnesses who remain as appellees properly may be classified as a complaining witness, covered only by qualified immunity. See *Kalina v. Fletcher*, 522 U.S. 118 (1997). These witnesses did not claim to be victims of the offense; they were third parties who investigated and testified about what they found, and such persons are covered squarely by *Briscoe*.

Plaintiffs maintain that the prosecutors do not have immunity because they should have arranged for better investigations and built a more complete record before initiating the prosecution; had they done this, the Lattas insist, they would have decided not to proceed. But there is no constitutional duty to "do a better investigation"; prosecutors may proceed on the basis of probable cause (all that is required for an indictment) and rely on defense counsel to marshal the evidence in defendants' favor. A jury thought the evidence against the Lattas sufficient beyond a reasonable doubt; the state court's grant of collateral relief rested on counsel's missteps at trial and not any doubt about the quality and sufficiency of the evidence.

Deciding when the evidence is sufficient to stop investigating and seek an indictment is a standard prosecutorial function and covered by absolute immunity because—unlike searches, seizures, interrogations, and other out-of-court activity—a decision not to extend a probe does not invade the accused's extra-judicial entitlements. See generally *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (*Buckley III*).

The absolute immunity applicable to witnesses covers the preparation for testimony as well as its delivery in court. See *Buckley v. Fitzsimmons*, 919 F.2d 1230 (7th Cir. 1990) (*Buckley I*), remanded on other grounds, 502 U.S. 801 (1991). Plaintiffs do not contend that the arson investigators independently violated any of their rights, as by an unjustified search. Their only theory is that the investigators, consultants, and experts did not do an adequately thorough investigation, so that the testimony presented was incomplete and misleading. Likewise the prosecutor's decision which expert evaluators to engage does not violate any suspect's constitutional rights. See *Buckley v. Fitzsimmons*, 20 F.3d 789 (7th Cir. 1994) (*Buckley IV*) (on remand from *Buckley III*).

We ackowledge that the methods that arson investigators used in the 1980s and 1990s have come under challenge; most experts today would use different approaches and therefore could reach different conclusions. See Sue Russell, *Arson evidence—shot down in flames*, 2565 New Scientist 42 (Nov. 3, 2006). Whether the application of today's tools would exculpate the Lattas is not a subject that can be resolved on this record but also is not material. Using the methods of the 1980s during the 1980s does not violate the Constitution. The criminal process, like other human endeavors, is imperfect. Science is imperfect too; techniques of arson investigation and analysis have advanced a good deal in the years since the fire at the Lattas' home. Perhaps an injustice has been done, as the Lattas ardently maintain. Section 1983 does not, however, supply monetary damages for every conviction that with the benefit of hindsight seems weaker to the federal judiciary than it did to the prosecutor, jury, and state judiciary.

Plaintiffs assert that one or more of the defendants failed to disclose exculpatory evidence, a constitutional tort not covered by immunity, see *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001), rehearing denied, 260 F.3d 824 (2001). The Lattas say that the chromatograms and comparison samples that Barker & Herbert Analytical Laboratories used in their analysis of the fire's origin would have been exculpatory. Yet the prosecution did not hide this evidence. Defense counsel was aware of it before trial and had subpoenas issued. Now the Lattas express disappointment with the information received in response. Any dispute about issues related to this evidence has nothing to do with *Brady v. Maryland*, 373 U.S. 83 (1963), and its successors, which concern only information unknown to the defense. If the subpoenas were not honored in full, the remedy was to ask the trial judge for an order compelling additional disclosures or to explore the subject on cross-examination when the investigators testified. All issues related to this evidence were open to litigation on direct appeal in the state courts.

One final subject requires a brief treatment. Two days after the fire, investigators questioned Jacqueline Latta. She made statements that the prosecutors interpreted as inculpatory. Jacqueline maintains that this interrogation violated her rights under the fifth amendment. Coercive interrogation out of court is actionable even though both the witness and the prosecutors have absolute immunity with respect to the introduction of the statements in court. See *Chavez v. Martinez*, 538 U.S. 760 (2003). See also *Buckley III* and *Buckley IV*.

This record, however, would not permit a reasonable jury to conclude that coercive interrogation took place. Jacqueline Latta's argument is not that the investigators used torture, sleep deprivation, or some other painful tactic. It is, rather, that she was distraught and emotionally vulnerable only two days after her son's death. No case of which we are aware establishes a constitutional principle that suspects in serious crimes are entitled to be free of interrogation until their minds are calm. Good investigative practice requires inquiry to be made while memories are fresh, and a high-strung emotional state may lead the suspect to tell the truth to put her conscience at rest. The interrogation did not violate Jacqueline's rights.

The Lattas' many claims against governmental bodies are not covered by immunities, but neither did plaintiffs demonstrate the existence of unconstitutional poli-

cies. See *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Appellants' other arguments have been considered and do not require us to add anything to the district court's thorough treatment.

AFFIRMED