# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2678

_____

Timothy R. Zike,                         *

                           *

        Appellant,          *

                           *   Appeal from the United States

    v.                      *   District Court for the

                           *   Eastern District of Missouri.

Advance America, Cash Advance   *

Centers of Missouri, Inc.,        *

                           *

        Appellee.           *

_____

Submitted: January 11, 2011
Filed: July 18, 2011

_____

Before WOLLMAN, LOKEN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Timothy R. Zike sued his former employer, Advance America, Cash Advance Centers of Missouri, Inc. ("Advance America"), claiming under Missouri law that Advance America subjected him to malicious prosecution and false arrest for his alleged theft of certain checks. The district court[1] granted summary judgment in Advance America's favor on both claims, concluding, *inter alia*, that Zike failed to create a genuine issue of fact as to the lack of probable cause for the theft

_____

[1]The Honorable Thomas C. Mummert III, United States Magistrate Judge for the Eastern District of Missouri.

prosecution, an essential element of malicious prosecution and false arrest under Missouri law. Zike presently appeals and, for the following reasons, we affirm.

## I. *Background*

Zike is a former employee of Advance America. In March 2006, Advance America hired Zike to work as a manager in training at its Moberly, Missouri location. In March 2007, Gerri Richardson became the new Divisional Director of Operations (DDO) and Zike's new supervisor at the Moberly office. The next day, Zike failed to report to work as scheduled, and Richardson ordered him to report to the office. The next week, Richardson visited the Moberly office, where Zike and his coworker, Monitaka Brown, were on shift. When Richardson arrived, Zike was departing to deposit a check at one bank and verify funds at another. Specifically, Zike intended to verify at Citizens Bank & Trust ("Citizens Bank") the funds of three customers, each of whom had tendered postdated checks to Advance America to secure their payday loans. Richardson terminated Zike's employment when he returned to the office. Richardson cited Zike's "poor performance" as the reason for the termination. The termination report—which Zike, Richardson, and Brown signed—rated Zike's attendance, cooperation, initiative, and quality of work as unsatisfactory.

After terminating Zike, Richardson audited the store and discovered that the three checks Zike had taken for verification, as well as a fourth check written by a Jack Zike,[2] were missing. Richardson promptly telephoned Zike and left a voicemail message requesting that Zike locate and return the checks. The next day, on March 6, 2006, Richardson instructed Brown and Tony Garrett, another Advance America employee, to go to Citizens Bank and inquire about the missing checks. A teller confirmed Zike's visit to the bank the preceding day and stated that she had verified that all the accounts linked to the outstanding checks were closed. Brown called Zike

___

[2]Zike is not related to Jack Zike.

and informed him that Richardson was alleging that he stole the checks. Zike assured Brown that he had returned the checks to the store prior to being terminated.

Also on the day after Zike's firing, Richardson telephoned Brian Beck, Advance America's regional loss-prevention manager, and notified him that four checks were missing. Beck called Zike at least once to inquire about the checks and left a voicemail, receiving no return call from Zike. On March 15, 2007, Beck mailed Zike a letter via regular postage and return receipt requested, reciting Zike's failure to return his phone calls and demanding that Zike return the four checks within ten days, lest Advance America pursue "future legal action." Eleven days later, Beck emailed Richardson, requesting that she file criminal charges against Zike for theft of the four checks.

Thereafter, Richardson tendered a statement to Officer T. R. Mitchell, recounting the check incident and company actions. Officer Mitchell prepared a report that included Richardson's statement that Advance America "does not have the physical check [sic] in their possession that they cannot collect on the check, nor could they take civil action against the people as they do not have the check to send to the bank," and thus, that "Advance America is out $1[,]489.25."

Advance America's policy at the time stipulated that, before legal action could be taken to collect on the checks, Advance America had to be in possession of the returned check. Indeed, one of the six questions on the worksheet that DDOs like Richardson were required to complete prior to instituting legal collections actions, asked whether Advance America possessed the check returned for insufficient funds. Zike notes that this policy was not actually reduced to writing and circulated among Advance America employees until after the events giving rise to his case. Richardson, however, offered unrefuted testimony that, written or not, company policy at the time required check possession. Richardson believed that Advance America could not legally collect from the checks' drawers without the actual checks.

In addition to Richardson's statement, Officer Mitchell took the statements of Brown and the bank teller. The teller could remember only that Zike came to the bank with checks, but she could no longer identify them. Officer Mitchell called Zike to arrange a meeting to take his statement before submitting information to the prosecutor. Zike, however, refused to meet outside the presence of counsel. Zike never called Officer Mitchell to arrange a mutually agreeable time for a meeting with counsel. Zike did not object to Officer Mitchell making his report without Zike's statement.

On April 27, 2006, Officer Mitchell signed a sworn "Probable Cause Statement" (his "report"), including therein, (1) Richardson's statement that she was unable to locate the checks after terminating Zike and that Zike never returned any of her correspondence, (2) Brown's statement confirming the same, (3) Richardson's statement that Advance America could not bring civil collection actions against the drawers of the checks without the checks themselves, and (4) Zike's statement that his lawyer had instructed him not to answer any questions. Upon receiving Officer Mitchell's report, Prosecutor Mike Fusselman independently determined that probable cause existed to charge Zike with felony theft, in violation of Missouri Revised Statute § 570.030,[3] and consequently filed a one-count felony complaint against Zike. Fusselman's complaint was unsworn.

Over a year later, sometime in June 2007, after learning of the complaint and associated warrant for his arrest, Zike turned himself in. In September 2007, the Circuit Court of Randolph County, Missouri, held a preliminary hearing in Zike's case, at which only Richardson testified. Specifically, Richardson testified consistent with Officer Mitchell's report that Advance America could not collect on the checks

---

[3]Section 570.030 provides, in pertinent part, that "[a] person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion."

without the checks themselves. Additionally, when asked, Richardson stated that, to her knowledge, the Moberly store had never lost checks during her tenure. Also, despite finding the Jack Zike check among its own files on April 5, 2006, and before Officer Mitchell even submitted his report, Richardson included that check as among those missing. At other times during the hearing, Richardson identified only the other three missing checks. Richardson testified that she did not know whether the checks' drawers were related to Zike. Finally, when asked by the court if she was merely surmising that Zike had taken the checks because he was the last one to have them, she replied, "I have no documentation that I can say he took them. All I know is he left with them out of my center and they were not returned on the desk with the other stacks of checks and the deposit." At the hearing's conclusion, the court determined that probable cause existed, and the case was "bound over" for further proceedings. In October 2007, Zike was arraigned and scheduled for a trial on June 16, 2008.

On May 21, 2008, subpoenas issued for the teller and Garrett, who accompanied Brown on her visit to Citizens Bank. Prosecutors were unable to locate either witness, and, on June 3, 2008, roughly two weeks before trial, Prosecutor Fusselman filed a *nolle prosequi*[4] dismissing the case "without prejudice because essential witnesses left [the] area and [could not] be located." Specifically, the teller's testimony was needed to establish that Zike had in fact brought the checks to Citizens Bank the day he was fired.

---

[4]Black's Law Dictionary defines "*nolle prosequi,*" Latin for "not to wish to prosecute," as follows: "1. A legal notice that a lawsuit has been abandoned. 2. A docket entry showing that the plaintiff or the prosecutor has abandoned the action.—Often shortened to *nolle*." Black's Law Dictionary 1070 (7th ed. 1999). Similarly, under Missouri law, "[a] *nolle prosequi* is a prosecutor's formal entry on the record indicating that he or she will no longer prosecute a pending criminal charge. It results in a dismissal without prejudice unless jeopardy attaches to bar subsequent prosecution." *Doyle v. Crane*, 200 S.W.3d 581, 587 (Mo. Ct. App. 2006).

On December 23, 2008, Zike filed the instant suit in Missouri state court against Advance America, alleging malicious prosecution. Thereafter, Advance America removed the case to federal court, and Zike later amended his complaint to add, *inter alia*, a claim for false arrest. On February 8, 2010, Advance America moved for summary judgment.

On May 3, 2010, the district court granted Advance America's motion for summary judgment and dismissed Zike's amended complaint. Specifically, the district court concluded that Zike failed to create genuine issues of material fact as to either (1) the lack of probable cause for his theft prosecution or (2) the fact that the prosecution was terminated in Zike's favor. Both of these are required elements that a plaintiff must prove in order to prevail on a claim of malicious prosecution under Missouri law. Likewise, because the lack of probable cause is also a required element of a false arrest claim under Missouri law, the district court granted summary judgment on that claim as well.

Zike appeals the summary adjudication of both his malicious prosecution and false arrest claims.

## II. *Discussion*

"We review the district court's grant of summary judgment de novo, applying the same standards as the district court and viewing the evidence in the light most favorable to the nonmoving party." *Travelers Prop. Cas. Co. of Am. v. Gen. Cas. Ins. Co.*, 465 F.3d 900, 903 (8th Cir. 2006).

### A. *Malicious Prosecution Claim*

To prevail on a claim for malicious prosecution under Missouri law, a plaintiff must prove: "1) commencement of an earlier suit against plaintiff; 2) instigation of the suit by defendant; 3) termination of the suit in plaintiff's favor; 4) lack of probable cause for the suit; 5) malice by defendant in instituting the suit; and 6) damage to

plaintiff resulting from the suit." *State ex rel. Police Ret. Sys. of St. Louis v. Mummert*, 875 S.W.2d 553, 555 (Mo. 1994) (en banc). In this case, the parties dispute only elements three and four, i.e., whether the underlying felony theft prosecution terminated in Zike's favor and whether Advance America lacked probable cause for the suit.

On appeal, Zike primarily contends that the trial court erred when it determined that (1) the Missouri court's finding of probable cause at the preliminary hearing constituted prima facie evidence that Advance America had probable cause to instigate the proceedings; and (2) Zike failed to rebut this prima facie presumption. Specifically, Zike maintains that he rebutted the prima facie proof with evidence that the Missouri court's probable cause determination was procured by Richardson's false or fabricated testimony.

We hold that the district court did not err in concluding that the Missouri court's probable cause determination at Zike's preliminary hearing constituted prima facie evidence of Advance America's probable cause which Zike has failed to rebut. As this court has recognized, the test for determining whether, under Missouri law, a malicious prosecution defendant possessed probable cause to instigate an underlying criminal proceeding asks "'whether the facts and circumstances would warrant a belief in an ordinarily cautious person that another had committed a crime.'" *Williams v. Ryder/P.I.E. Nationwide, Inc.*, 786 F.2d 854, 857 (8th Cir. 1986) (quoting *Dodson v. MFA Ins. Co.*, 509 S.W.2d 461, 467 (Mo. 1974)). Notably, the Missouri Supreme Court has issued several important caveats to this rule. First, because "[p]roving the want of probable cause involves proving a negative," Missouri courts have determined that "the slightest of proof is all that is required to make a prima face case." *Fust v. Francois*, 913 S.W.2d 38, 44 (Mo. Ct. App. 1996) (citing *Haswell v. Liberty Mut. Ins. Co.*, 557 S.W.2d 628, 633 (Mo. 1977) (en banc)). Conversely, where the facts of a malicious prosecution claim are undisputed—as is arguably the case here—whether defendants like Advance America possessed probable cause "is a

question of law for the court, not a question of fact for the jury." *Police Ret. Sys.*, 875 S.W.2d at 555; *accord Fust*, 913 S.W.2d at 44 (citing *Police Ret. Sys.*, 875 S.W.2d at 555).

Finally, and most pertinent to the present case, certain circumstances constitute prima facie evidence of a malicious-prosecution defendant's probable cause and consequently trigger a rebuttable presumption that a defendant had probable cause to initiate the underlying criminal proceedings. Namely, the Missouri Supreme Court has recognized three scenarios that independently amount to prima facie evidence of a malicious-prosecution defendant's probable cause to have commenced criminal proceedings against the plaintiff: (1) the original charging instrument is a grand jury's indictment; (2) the original charging instrument is a prosecuting attorney's sworn complaint or information, based on his own information and belief;[5] or (3) an examining magistrate's finding of probable cause at a preliminary hearing, and subsequent "binding over" of the defendant for trial. *Moad*, 496 S.W.2d at 798–99; *accord Huffstutler v. Coates*, 335 S.W.2d 70, 75 (Mo. 1960); *Randal v. Kline's, Inc.*, 49 S.W.2d 112, 114 (Mo. 1932).

In the instant case, it is undisputed that the Circuit Court of Randolph County, Missouri, held a preliminary hearing in Zike's case, and that, out of that hearing, the Missouri court found probable cause to bind Zike over for trial. This constitutes prima facie evidence of Advance America's probable cause, which Zike now bears

---

[5]Advance America spends two pages of its brief arguing, rather disingenuously, that Prosecutor Fusselman's complaint constitutes prima facie evidence of its probable cause as well. However, neither party disputes that Prosecutor Fusselman's complaint is unsworn, and Missouri law is clear that the prosecutor's charging instrument must be *sworn* to trigger the presumption. *Moad v. Pioneer Fin. Co.*, 496 S.W.2d 794, 798–99 (Mo. 1973). Accordingly, only the Missouri court's probable cause determination at Zike's preliminary hearing may serve as prima facie evidence of Advance America's probable cause.

the burden to rebut. *Cf. Kvasnicka v. Montgomery Ward & Co.*, 166 S.W.2d 503, 505 (Mo. 1942) ("In this case the plaintiff recognized that the burden of proof was upon her to overcome the prima facie presumption of probable cause arising out of the indictment . . . ."). Previously, the Missouri Supreme Court has only recognized one way[6] for Zike to rebut this prima facie evidence which was to show that the examining magistrate's finding at the hearing was procured through false or fraudulent testimony. *Huffstutler*, 335 S.W.2d at 75. In this vein, Zike points to three portions of Richardson's testimony at the preliminary hearing that he contends were false: (1) Richardson's inclusion of the recovered Jack Zike check with the three missing checks, (2) Richardson's statement to loss-prevention manager Brian Beck that she thought Zike was related to Jack Zike, and (3) Richardson's statement that Advance America needed the checks to pursue collection efforts against their drawers.

---

[6]In *Huffstutler v. Coates*, the Missouri Supreme Court "wish[ed] to make clear" that it

> do[es] not necessarily subscribe to or affirm the proposition that the rule in [Missouri] is that a presumption which arises or a prima facie case of probable cause which is made by reason of an order of a magistrate binding over an accused to the circuit court is conclusive unless overcome *only* by evidence that the magistrate's order was obtained by false testimony or other improper means.

335 S.W.2d at 75.

Rather, the court noted—without entirely endorsing—its own statements in more archaic cases that a malicious prosecution plaintiff could also rebut the presumption with "evidence showing that the prosecutor, notwithstanding . . . the committing magistrate, did not himself believe the defendant to be guilty." *Id.* (internal quotation and citation omitted). At any rate, this second possible method is inapplicable here because Zike does not argue, nor does any evidence suggest, that Prosecutor Fusselman doubted Zike's guilt.

However, contrary to Zike's contention, the trial court correctly dismissed all of these discrepancies as both immaterial to the magistrate's determination of probable cause and unknowingly false. To be sure,

> [t]he defendant in a malicious prosecution action "is to be held responsible, not only for the facts he knew when he caused the suit to be instituted but also for all other facts pertinent to the suit which he could have ascertained by due diligence prior to causing the law to be put in motion."

*Kelley v. Kelly Residential Grp., Inc.*, 945 S.W.2d 544, 549 (Mo. Ct. App. 1997) (quoting *Haswell*, 557 S.W.2d at 634). Still, minor inconsistencies or omissions by a malicious prosecution defendant at a preliminary hearing do not operate to rebut the presumption raised by an otherwise valid probable cause finding at that hearing. *See, e.g., Crow v. Crawford & Co.*, 259 S.W.3d 104, 116 (Mo. Ct. App. 2008) ("The failure to provide every last piece of information in one's possession does not constitute providing false information."). Additionally, Zike, citing a legal dictionary, urges in his brief that "[a] false statement is simply one that is not true," and that, accordingly, "a mere showing that testimony as to a material issue is not true is sufficient for rebuttal of such a probable cause determination." Thus, Zike concludes, "[i]t is unnecssary to show the witness knew that her testimony was false." Nevertheless, Missouri law is precisely the opposite. As the Missouri Supreme Court has stated,

> [w]hile some of the matters mentioned, supra, tend to affect the credibility of the witnesses and the weight and value of their testimony and tend to show that the witnesses were in fact mistaken or their opinions erroneous, there was no substantial evidence to sustain a finding that the testimony of defendant company's witnesses before the grand jury [(or, in this case, before the examining magistrate)] was both false *and known to be false, as required* . . . .

*Kvasnicka*, 166 S.W.2d at 511 (emphasis added).

-10-

Finally, Missouri law disfavors the tort of malicious prosecution as being against the general public policy of encouraging its citizens to report crimes, and, thus, "strict and clear proof" of each element is required. *Cassidy v. Dillard Dep't Stores*, 167 F.3d 1215, 1219 (8th Cir. 1999) (citing *Burnett v. Griffith*, 769 S.W.2d 780, 783 (Mo. 1989) (en banc)). At bottom, Zike cannot demonstrate how any of these statements by Richardson were knowingly false or how they were at all relevant to the Missouri magistrate's determination of whether probable cause existed to charge him with theft of the checks at issue.

Accordingly, Zike failed to create a genuine issue of material fact as to Advance America's lack of probable cause, and therefore the trial court's grant of summary judgment on Zike's malicious prosecution claim was proper on that basis. Moreover, having determined that Zike failed to create a genuine fact issue concerning this essential element of his claim, we decline to address the district court's alternative holding that the underlying prosecution did not terminate in Zike's favor.

## B. *False Arrest Claim*

Under Missouri law to prevail on a claim for false arrest, also termed "false imprisonment," a plaintiff must show that the defendant confined the plaintiff without legal justification. *Highfill v. Hale*, 186 S.W.3d 277, 280 (Mo. 2006) (en banc). A defendant is considered to have "confined" the plaintiff for the purposes of false arrest if he or she "encourages, causes, promotes, or instigates the arrest." *Id.* (citing *Day v. Wells Fargo Guard Serv. Co.*, 711 S.W.2d 503, 505 (Mo. 1986) (en banc)). However, as we have recognized in the past, where, as here, an arrest is supported by probable cause, that arrest is justified *per se* under Missouri law and therefore cannot form the basis of a false-arrest claim. *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 820 (8th Cir. 2010). Consequently, the district court also correctly granted summary judgment in Advance America's favor on Zike's claim for false arrest.

-11-

### III. *Conclusion*

Based on the foregoing, we affirm.

_____