# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1573
_____

Jason Stockley

*Plaintiff - Appellant*

v.

Jennifer M. Joyce, in her individual and official capacity as former Circuit
Attorney for the City of St. Louis, Missouri; Kirk Deeken, Lt. in his capacity as an
officer of the St. Louis Police Department, and individually; City of St. Louis, Missouri

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: March 11, 2020
Filed: June 29, 2020

_____

Before GRUENDER, ARNOLD, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Jason Stockley sued former Circuit Attorney for the City of St. Louis, Missouri
Jennifer Joyce, St. Louis Metropolitan Police Department (SLMPD) Lieutenant Kirk
Deeken, and the City of St. Louis (City), asserting claims arising under 42 U.S.C.
§ 1983 and state law. These claims stem from a first-degree murder charge against

Stockley of which he was subsequently acquitted.  The district court[1] dismissed the claims, and Stockley now appeals.  Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

According to the amended complaint, on December 20, 2011, Jason Stockley, then an SLMPD officer, was on duty when he and his partner, Officer Brian Bianchi, observed what they believed to be a hand-to-hand drug transaction outside of a fast-food restaurant.  Bianchi drove the police vehicle into the parking lot of the fast-food restaurant, at which point he and Stockley observed one of the suspected participants in the drug transaction, later identified as Anthony Lamar Smith, get into a parked vehicle.  Bianchi parked the police vehicle so that it blocked the path of Smith's vehicle, and then both Stockley and Bianchi exited the police vehicle.  Smith began to drive away, striking the police vehicle and another vehicle in the process.  Bianchi broke the driver's side window of Smith's vehicle, saw a handgun inside the vehicle, and yelled to Stockley that there was a gun.  As Smith's vehicle accelerated out of the parking lot, it struck Stockley and Stockley observed Smith holding a handgun.  Smith then drove away at high speed, and Bianchi pursued him with Stockley in the passenger seat.  According to the probable cause affidavit attached as an exhibit to the amended complaint, during the chase, Stockley stated: "going to kill this motherfucker, don't you know it."  Smith eventually crashed his vehicle.  Stockley directed Bianchi to rear-end Smith's vehicle, and Bianchi complied.  Stockley exited the police vehicle and approached the driver's side door of Smith's vehicle.  For fifteen seconds, Stockley gave commands directing Smith to show his hands and exit the vehicle.  Smith did not comply, leaned toward the right side of the vehicle where Stockley had observed the handgun, and Stockley shot Smith five times, killing him.

---

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri, now deceased.

Thereafter, the SLMPD's Internal Affairs Division conducted an investigation into Smith's death and found no basis for criminal prosecution of Stockley. St. Louis Circuit Attorney Joyce then reviewed the evidence and declined to prosecute Stockley. The Federal Bureau of Investigation, the United States Attorney, and the United States Department of Justice Civil Rights Division also investigated the incident and declined to prosecute Stockley. In May 2015, Joyce declined to prosecute a different officer involved in an unrelated fatal shooting based on the evidence of the SLMPD Force Investigation Unit (FIU), which had been recently created to investigate police shootings. To protest Joyce's decision not to prosecute the other officer, activists demonstrated outside of Joyce's house. Subsequently, in April 2016, activists demonstrated at St. Louis City Hall protesting Joyce's decision not to prosecute Stockley. Stockley alleges that shortly after the City Hall demonstration, Joyce met privately with protest leaders and informed them that she would charge Stockley with first-degree murder.

In May 2016, the FIU reopened the investigation into Smith's death. After one day, and before the FIU could complete its investigation, the FIU officers were instructed to return the police file to Joyce, who had decided to prosecute Stockley for first-degree murder. Stockley alleges that this decision was in violation of Joyce's own protocol of requiring an FIU investigation of a police shooting prior to any prosecutorial decision regarding initiation of charges. Stockley also alleges that, during this process, Joyce announced at one or more press conferences or public settings that she had found new evidence proving Stockley was guilty of first-degree murder. In fact, Joyce did not possess new evidence discovered after 2012 that could justify a first-degree murder charge against Stockley. After making her charging decision, Joyce prepared a statement of probable cause in order to obtain a warrant for Stockley's arrest. Deeken, a sergeant in the SLMPD's Internal Affairs Division when the incident was first investigated in 2012, signed the statement under oath.

On May 13, 2016, the criminal complaint against Stockley was filed in St. Louis circuit court. A state court judge found probable cause and issued a warrant for Stockley's arrest. A Missouri grand jury later returned an indictment charging Stockley with first-degree murder. Stockley proceeded to a bench trial, and the court, concluding that the government had not proven its case beyond a reasonable doubt, acquitted Stockley.

In 2018, Stockley filed an amended complaint in federal court, asserting the following claims: (1) Section 1983 claims against Joyce, Deeken, and the City, alleging the defendants, individually and conspiring with each other, deprived Stockley of substantive due process and fair treatment by police and prosecuting authorities in violation of the Fourteenth Amendment; (2) Monell[2] claims against the City and Joyce in her official capacity; (3) a state law defamation claim against Joyce in her individual and official capacities; and (4) a state law malicious prosecution claim against Deeken in his individual and official capacities. Joyce, Deeken, and the City separately filed motions to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), and the district court granted each of their motions. The court concluded that Joyce was entitled to absolute immunity as to her charging decision and that Stockley failed to state a claim as to each of the remaining causes of action against Joyce and Deeken. Further, the court dismissed the Monell claim against the City because it had already concluded that neither Joyce nor Deeken had violated Stockley's constitutional rights.[3] On appeal, Stockley challenges these rulings.

_____

[2]Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (holding municipality may be liable under § 1983 for an unconstitutional policy or custom).

[3]The district court also dismissed Stockley's § 1983 official-capacity claims against Joyce and Deeken because they were duplicative of Stockley's claims against the City and dismissed the official-capacity state law claims against Joyce and Deeken because the City was entitled to sovereign immunity for such claims. Stockley does not challenge these rulings on appeal.

II.

Stockley argues the district court erred in granting the motions to dismiss. We review de novo a district court order granting a motion to dismiss under Rule 12(b)(6), "accepting as true all factual allegations in the light most favorable to the nonmoving party." Glick v. W. Power Sports, Inc., 944 F.3d 714, 717 (8th Cir. 2019). "Although detailed allegations are not required to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (internal quotation marks omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Additionally, "[w]here an official's challenged actions are protected by absolute immunity, dismissal under Rule 12(b)(6) is appropriate." Sample v. City of Woodbury, 836 F.3d 913, 916 (8th Cir. 2016).

Specifically, Stockley appeals the district court's rulings on his § 1983 and tort claims. "Section 1983 provides a mechanism by which aggrieved plaintiffs may sue a state actor for violation of their constitutional rights." Waters v. Madson, 921 F.3d 725, 734 (8th Cir. 2019). As to the tort claims, the parties do not dispute that Missouri law governs.

A.

Stockley argues the district court erroneously dismissed his § 1983 and defamation claims against Joyce in her individual capacity. Specifically, Stockley alleges that Joyce: (1) was not absolutely immune from liability for prematurely terminating the FIU investigation and bringing the first-degree murder charge against him; (2) violated his substantive due process rights when she announced in public settings that she had new evidence proving Stockley was guilty of first-degree murder; and (3) defamed Stockley in making public announcements alleging she had

-5-

discovered new evidence proving Stockley was guilty of first-degree murder. For the reasons that follow, we conclude the district court did not err in dismissing Stockley's claims against Joyce.

i.

Stockley first argues that Joyce was not absolutely immune from liability under § 1983 for prematurely terminating the FIU investigation and charging him with first-degree murder. "[A]bsolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." Imbler v. Pachtman, 424 U.S. 409, 419 n.13 (1976). We employ a functional test to determine whether the prosecutor is absolutely immune in a civil suit for damages under § 1983: a prosecutor is immune for conduct related to "initiating a prosecution and . . . presenting the State's case." Id. at 431; see also Burns v. Reed, 500 U.S. 478, 486 (1991) (establishing that prosecutors are immune for their conduct "insofar as that conduct is intimately associated with the judicial phase of the criminal process" (internal quotation marks omitted)). However, "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) (holding prosecutor's investigatory conduct was not entitled to absolute immunity).

Stockley alleges that Joyce violated his due process rights by terminating the FIU's legitimate investigation to prevent the FIU investigation from revealing her prosecution of Stockley was a sham. He argues that this was investigative misconduct, particularly in light of the fact that the charging decision came years after the incident with Smith and the fact that it was in violation of Joyce's own protocol regarding FIU investigations. Accordingly, he argues that such conduct is not protected by absolute immunity. However, "[t]he decisions relating to the initiation and dismissal of cases are at the very heart of a prosecutor's function as an advocate

-6-

for the state, and absolute immunity thus attaches to those decisions." Brodnicki v. City of Omaha, 75 F.3d 1261, 1268 (8th Cir. 1996); see also Latta v. Chapala, 221 F. App'x 443, 445 (7th Cir. 2007) ("Deciding when the evidence is sufficient to stop investigating and seek an indictment is a standard prosecutorial function and covered by absolute immunity because—unlike searches, seizures, interrogations, and other out-of-court activity—a decision not to extend a probe does not invade the accused's extra-judicial entitlements."). Here, Joyce's decision that there was sufficient evidence to end the FIU investigation, even after only one day, and charge Stockley with first-degree murder clearly falls within the prosecutorial function of initiating judicial proceedings.

Further, even if Joyce's termination of the FIU investigation and initial decision declining to prosecute Stockley in 2012 could be construed as indicating that Joyce had an improper motive in reversing course and charging Stockley in 2016, "[a]llegations of unethical conduct and improper motive in the performance of prosecutorial functions do not defeat the protection of absolute immunity." Sample, 836 F.3d at 916; see also Reasonover v. St. Louis Cnty., 447 F.3d 569, 580 (8th Cir. 2006) ("Immunity is not defeated by allegations of malice, vindictiveness, or self-interest.").

Accordingly, Joyce is absolutely immune from liability for her decision to terminate the FIU investigation and charge Stockley with first-degree murder.

ii.

Stockley also alleges that Joyce violated his substantive due process rights when she made false public statements claiming that she had new evidence proving Stockley was guilty of first-degree murder. We agree with Stockley that this conduct is not protected by absolute immunity, see Buckley, 509 U.S. at 277 (explaining that "[c]omments to the media have no functional tie to the judicial process just because

-7-

they are made by a prosecutor" and are not entitled to absolute immunity), and thus we must analyze whether this conduct amounts to a due process violation. "To establish a substantive due process violation, [the plaintiff] must demonstrate that a fundamental right was violated and that [the defendant's] conduct shocks the conscience." Folkerts v. City of Waverly, 707 F.3d 975, 980 (8th Cir. 2013). Conduct that "shocks the conscience" requires more than showing "that the government official's behavior meets the lowest common denominator of customary tort liability. . . . Only the most severe violations of individual rights that result from the brutal and inhumane abuse of official power rise to this level." White v. Smith, 696 F.3d 740, 757-58 (8th Cir. 2012) (citation and internal quotation marks omitted). Whether conduct is conscience-shocking is a question of law. Folkerts, 707 F.3d at 980.

Stockley argues that Joyce's conduct instilled prejudice against him in the minds of prospective jurors and thus violated his constitutional rights to a trial by an impartial jury and fair criminal proceedings. Even assuming Joyce's statements somehow impacted Stockley's constitutional rights to an impartial jury and fair criminal proceedings, such conduct is a routine part of a prosecutor's job and, even considering the representations made by Joyce, was not "the sort of brutal and inhumane abuse of official power that shocks the conscience." White, 696 F.3d at 758 (internal quotation marks omitted). Thus, Joyce's conduct of making public statements regarding her decision to charge Stockley and the evidence supporting that decision does not remotely rise to the conscience-shocking level.

Accordingly, Stockley has failed to state a substantive due process claim against Joyce based on her public statements.

iii.

Finally, Stockley alleges that Joyce defamed him under Missouri law when she falsely stated in public settings that she had new evidence proving Stockley was guilty of first-degree murder. In order to state a claim for defamation under Missouri law, the plaintiff must allege: "1) publication, 2) of a defamatory statement, 3) that identifies the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation." Smith v. Humane Soc'y of U.S., 519 S.W.3d 789, 798 (Mo. 2017) (en banc). In determining whether a statement is defamatory, "the alleged defamatory words must be considered in context, giving them their plain and ordinarily understood meaning." Id. (quoting Nazeri v. Mo. Valley Coll., 860 S.W.2d 303, 311 (Mo. 1993) (en banc)) (internal quotation marks omitted). Defamatory statements are those that "tend to disgrace and degrade the person or expose him to public hatred, contempt, or ridicule or cause him to be shunned or avoided." Mandel v. O'Connor, 99 S.W.3d 33, 36 (Mo. Ct. App. 2003).

Assuming without deciding that Stockley has sufficiently pled the other elements of his defamation claim, we focus our analysis on the final element: whether Joyce's public statements caused damage to Stockley's reputation. Under Missouri law, "proof of actual reputational harm is an absolute prerequisite in a defamation action." Kenney v. Wal-Mart Stores, Inc., 100 S.W.3d 809, 817 (Mo. 2003) (en banc). "To demonstrate actual damages, plaintiffs must show that defamatory statements caused a quantifiable professional or personal injury, such as interference with job performance, psychological or emotional distress, or depression." Arthaud v. Mut. of Omaha Ins. Co., 170 F.3d 860, 862 (8th Cir. 1999).

As an initial matter, we note that Joyce's statements consist of two parts: (1) that she uncovered "new evidence" and (2) that such new evidence proved Stockley was guilty of first-degree murder. The portion of Joyce's statements related to uncovering new evidence is not defamatory as a matter of law. While such a claim

-9-

could impact the perceived legitimacy of a charging decision, it does not alone "tend to disgrace and degrade" Stockley. Mandel, 99 S.W.3d at 36. It is only when the claim of new evidence is clarified by the explanation that the new evidence proves that Stockley was guilty of first-degree murder that any conceivable reputational injury arises. Accordingly, the gravamen of Stockley's defamation claim—the portion of Joyce's statements that Stockley alleges tends to disgrace and degrade him—is not that Joyce had "new evidence," but rather that such evidence proved Stockley was guilty of first-degree murder.

However, the portion of the statements related to Stockley's guilt reflects Joyce's charging decision, which was supported by probable cause findings of both a state court judge and a grand jury. While Stockley alleges that Joyce's statements damaged his reputation, and thus made it difficult for him to find employment and caused mental anguish and attendant physical harm, we conclude that any such reputational damage would flow from Stockley's charge, arrest, and prosecution. Indeed, the impact of a prosecutor's public statement that, based on new evidence, she believes a defendant to be guilty of a crime pales to the point of insignificance when compared to the prosecutor's actions in submitting a complaint supported by probable cause to a judge, the judge's issuance of a warrant, and the ensuing trial—actions for which the prosecutor is immune. See Kenney, 100 S.W.3d at 818 (noting that the plaintiff must show that the harm alleged as flowing from the defamatory statement is distinguishable from the harm flowing from other sources). Stockley only makes the conclusory allegation that Joyce's statements, as opposed to the charge, arrest, and prosecution, caused this damage to his reputation without alleging any facts in support of this conclusion. See Glick, 944 F.3d at 717 ("[W]e need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts."). Thus, Stockley has failed to sufficiently plead that Joyce's public statements regarding Stockley's guilt caused damage to his reputation where, as here, Stockley was charged, arrested, and tried for first-degree murder.

-10-

Accordingly, Stockley has failed to state a defamation claim against Joyce.

B.

Stockley alleges the district court erroneously dismissed his § 1983 and malicious prosecution claims against Deeken in his individual capacity. Specifically, Stockley alleges that Deeken: (1) violated his substantive due process rights by misrepresenting the facts in the probable cause affidavit and (2) maliciously prosecuted Stockley in that Deeken's misleading probable cause affidavit began Stockley's prosecution. The basis for both claims is Stockley's allegation that Deeken included false information and omitted material information in the probable cause affidavit. Stockley alleges that the probable cause affidavit misrepresented that Smith's vehicle was slowing to a stop at the end of the chase and omitted several facts, including: that Stockley and his partner saw a gun in Smith's possession, that Smith struck two parked vehicles prior to fleeing, that Smith had a history of felony firearm and drug convictions and of leading police on high-speed chases, that Stockley spent 15 seconds at the driver's side door ordering Smith to show his hands and exit the vehicle before shooting, that Stockley reported seeing Smith reach for his gun, and that the dash-cam recording showed Stockley jumping backwards while discharging his weapon. For the reasons that follow, we conclude the district court did not err in dismissing the claims against Deeken.

i.

Stockley alleges that Deeken violated his substantive due process rights when Deeken included false information and omitted material information in the probable cause affidavit, indicating Deeken either recklessly or intentionally failed to investigate. As discussed above, "[t]o establish a substantive due process violation, [the plaintiff] must demonstrate that a fundamental right was violated and that [the defendant's] conduct shocks the conscience. . . . Whether conduct shocks the

-11-

conscience is a question of law." Folkerts, 707 F.3d at 980. "To establish a violation of due process based on a failure to investigate, [the plaintiff] must show that [the defendant] intentionally or recklessly failed to investigate, thereby shocking the conscience." Akins v. Epperly, 588 F.3d 1178, 1184 (8th Cir. 2009) (internal quotation marks omitted). Investigators intentionally or recklessly fail to investigate when they: "(1) attempt to coerce or threaten the criminal defendant, (2) purposefully ignore evidence of the defendant's innocence, or (3) systematically pressure to implicate the defendant despite contrary evidence." Folkerts, 707 F.3d at 981.

First, to the extent Stockley argues that the allegations of the misrepresentation and omissions in the probable cause affidavit support a claim that Deeken violated Stockley's substantive due process rights solely because the judge would not have found there was probable cause to issue the arrest warrant if the affidavit had included complete and accurate information, this argument is foreclosed by Manuel v. City of Joliet, 137 S. Ct. 911 (2017). "Any deprivation of [Stockley's] liberty before his criminal trial [including arrest without probable cause] . . . is governed by the Fourth Amendment and its prohibition on unreasonable seizures[,]" not the Fourteenth Amendment. Johnson v. McCarver, 942 F.3d 405, 410-11 (8th Cir. 2019) (citing Manuel, 137 S. Ct. at 917, abrogating Moran v. Clarke, 296 F.3d 638, 646-47 (8th Cir. 2002) (en banc)) (rejecting plaintiff's claim that "officers deprived him of liberty without due process of law by falsifying a report of his arrest"). In Manuel, the Supreme Court held that if the plaintiff's "complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment." 137 S. Ct. at 919. This includes a circumstance in which, similar to the allegations at issue here, "a judge's probable-cause determination is predicated solely on a police officer's false statements." Id. at 918; see also Albright v. Oliver, 510 U.S. 266, 271, 275 (1994) (plurality concluding that the Fourth Amendment, not the Due Process Clause, is the proper route for a § 1983 plaintiff to challenge criminal prosecution not based on

probable cause). Stockley does not allege a Fourth Amendment claim in the amended complaint.

Second, assuming Stockley's allegations of the misrepresentation and omissions in the probable cause affidavit can support a substantive due process claim—in that the affidavit supports a claim that Deeken recklessly investigated the incident and thus Deeken's conduct shocks the conscience—we conclude that this argument also fails. Even if the affidavit included a misrepresentation as to Smith slowing down and omitted certain other facts, it would not be "impossible to find probable cause if the omitted evidence had been included." United States v. Jansen, 470 F.3d 762, 766 (8th Cir. 2006) (applying standard in concluding there was no basis for Fourth Amendment Franks[4] hearing). The affidavit included facts, which Stockley does not challenge, tending to support a finding of probable cause: during the chase, Stockley stated he was "going to kill this motherfucker, don't you know it," he then ordered his partner to strike the back of Smith's vehicle, and finally he shot Smith five times. In light of these facts, it would not be impossible to conclude that probable cause would have been found if the misrepresentation had been corrected and the omissions had been included. Accordingly, Deeken's failure to include such facts does not demonstrate Deeken recklessly or intentionally failed to investigate, thereby shocking the conscience.

Accordingly, Stockley has failed to state a substantive due process claim against Deeken based on the probable cause affidavit.

--------

[4]Franks v. Delaware, 438 U.S. 154, 155-56 (1978) ("[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.").

-13-

ii.

Stockley also alleges that Deeken maliciously prosecuted him in that Deeken's misleading probable cause affidavit instigated Stockley's prosecution. To state a claim for malicious prosecution under Missouri law, Stockley must allege:

> (1) commencement of an earlier suit against the party; (2) instigation of that suit by the adverse party; (3) termination of the suit in the party's favor; (4) lack of probable cause for filing the suit; (5) malice by the adverse party in initiating the suit; and (6) damage sustained by the party as a result of the suit.

Copeland v. Wicks, 468 S.W.3d 886, 889 (Mo. 2015) (en banc). "Malicious prosecution actions are not favored in the law as public policy supports uncovering and prosecuting crime. As such, courts require strict compliance with the requisite elements." Id. (citation omitted).

First, Stockley argues that he pled sufficient facts showing that Deeken lacked probable cause to obtain a warrant for Stockley's arrest on the first-degree murder charge. Specifically, Stockley alleges that the probable cause affidavit's misrepresentation and omissions support a claim that Deeken did not have probable cause to seek an arrest warrant. "Where there is no dispute about the facts of a claim for malicious prosecution, the existence of probable cause is a question of law for the court." State ex rel. Police Ret. Sys. of St. Louis v. Mummert, 875 S.W.2d 553, 555 (Mo. 1994) (en banc). Under Missouri law, "certain circumstances constitute prima facie evidence of a malicious-prosecution defendant's probable cause and consequently trigger a rebuttable presumption that a defendant had probable cause to initiate the underlying criminal proceedings[,]" one of which is "an examining magistrate's finding of probable cause at a preliminary hearing." Zike v. Advance Am., Cash Advance Ctrs. of Mo., Inc., 646 F.3d 504, 510 (8th Cir. 2011). One

method to rebut this presumption is by showing the government procured the probable cause finding through false or fraudulent testimony. Id. at 510-11.

Here, it is undisputed that a state court judge determined there was probable cause to issue Stockley's arrest warrant. Stockley attempts to rebut the probable cause presumption by arguing that the allegations of the affidavit's misrepresentation and omissions support a claim that the government procured the probable cause finding through false or fraudulent testimony. However, as discussed above, a state court judge could conclude that there was probable cause even with the misrepresentation corrected and omissions included in the probable cause affidavit. Accordingly, the allegations of the misrepresentation and omissions are insufficient to support a claim that the probable cause finding was obtained through false or fraudulent testimony and thus insufficient to rebut the probable cause presumption.

Second, Stockley argues that he sufficiently pled facts showing that Deeken acted with malice. Missouri law requires that the plaintiff allege facts that show that "the proceedings must have been initiated primarily for a purpose other than that of bringing an offender to justice" and that the government "acted without reasonable grounds." Sanders v. Daniel Int'l Corp., 682 S.W.2d 803, 814 & n.4 (Mo. 1984) (en banc). Stockley's amended complaint alleges that Deeken acted for a "purpose other than bri[n]ging an offender to justice" but that is a conclusory allegation and Stockley alleges no additional facts to support that allegation. While the amended complaint does allege Deeken disliked and bore ill will toward Stockley, such an allegation is not enough to support a finding of legal malice, especially when probable cause supports the arrest warrant. See Sinopole v. Morris, 743 S.W.2d 81, 85 (Mo. Ct. App. 1987) ("[I]f the defendant's purpose is otherwise proper, the addition of the incidental fact that he felt indignation or resentment toward the plaintiff will not make him liable.").

Accordingly, Stockley has failed to state a malicious prosecution claim against Deeken.

## C.

Stockley argues the district court erroneously dismissed the Monell claim against the City. See Monell, 436 U.S. at 694. Specifically, Stockley alleges the City condoned and ratified Joyce's actions as she was the final policymaker regarding prosecutorial customs and practices. Thus, he asserts her conduct constituted official policy and practice of the City and resulted in a deprivation of his constitutional rights. "Without a constitutional violation by the individual officers, there can be no § 1983 or Monell . . . liability." Sanders v. City of Minneapolis, 474 F.3d 523, 527 (8th Cir. 2007). Therefore, we need not consider whether Joyce's public statements provide the basis for the Monell claim because we have already determined that this conduct did not violate Stockley's constitutional rights. To the extent Stockley alleges a Monell claim based on Joyce's role in drafting the probable cause affidavit, Stockley alleges no facts that Joyce's conduct in drafting the probable cause affidavit differs from Deeken's conduct in drafting it. Because we have already determined that Deeken did not violate Stockley's constitutional rights in drafting the probable cause affidavit, we similarly conclude that Joyce's conduct in drafting it did not violate Stockley's constitutional rights. Accordingly, there can be no Monell claim on this basis.

However, we did not reach the question of whether Joyce's charging decision resulted in a constitutional deprivation because we determined that she was absolutely immune for such conduct. Because "the absolute immunity of its policymakers does not shield a city from liability for its policies[,]" Webb v. City of Maplewood, 889 F.3d 483, 487 (8th Cir. 2018), we must now decide whether Joyce's decision to terminate the FIU investigation and charge Stockley constitutes municipal policy. A municipality may be subject to § 1983 liability if an "action pursuant to official

-16-

municipal policy of some nature caused a constitutional tort." Monell, 436 U.S. at 691. "Although a single unconstitutional act may not always suffice to support a claim of municipal liability, an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." Bernini v. City of St. Paul, 665 F.3d 997, 1007 (8th Cir. 2012) (citations and internal quotation marks omitted). A policy is "a deliberate choice to follow a course of action [] made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986). This Court has a held that a policy is "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999).

Here, Stockley alleges Joyce implemented a policy of terminating a legitimate investigation to cover up her own misrepresentation about Stockley's guilt and to charge him with first-degree murder. However, Joyce's decision to terminate the FIU investigation and charge Stockley was not a "guiding principle or procedure." Instead, it was an individual charging decision based upon a particular set of facts supported by arguable probable cause. See Pembaur, 475 U.S. at 483-84 (holding prosecutor's direction to deputy sheriffs to use force in serving capiases constituted municipal policy). Thus, this conduct does not constitute municipal policy.[5]

Accordingly, we conclude the district court properly dismissed the Monell claim against the City.

_____

[5]To the extent that Stockley alleges that this same conduct constitutes a "custom," because "there was no meaningful argument on this claim in his opening brief, it is waived." Chay-Velasquez v. Ashcroft, 367 F.3d 751, 756 (8th Cir. 2004).

## III.

For the foregoing reasons, we affirm.

_____